## EDWARD SMITH v. JAMES TUCKER.

Where in an action of trespass to try title, the verdict of the jury found for the plaintiff " the land described in the petition, less seven hundred and sixty-seven and a half acres, as described in the deed read in evidence from B. F. Hooper to C. M. Adams," and the pleadings contained no description of the land conveyed by that deed; *held*, that the court could render no judgment upon such finding of the jury, because it could only do so by looking out of the record to the evidence given on the trial.

It has been determined in Mays v. Lewis, (4 Tex. R., 38,) and there can be nothing clearer or better settled than that a verdict, which is not so certain that the court can give judgment upon it without looking out of the record to the evidence given upon the trial, will not support a judgment.

Where the statement of facts has not the approval of the presiding judge, as the statute requires, this court will not revise the charge given by the judge, or other questions raised upon the record with which the facts would be connected, or material to be considered.

The grantee of a certificate for land cannot, after selling and conveying portions of the land which he has procured to be surveyed upon public domain, by virtue of it, abandon his location, and sell or otherwise dispose of the certificate in prejudice of the rights of his former vendees.

And where, after making such location and survey, and the sale of certain portions of the land, he sells to a third person the certificate, and it, but not the land, is in the contemplation of the contracting parties, the certificate will not carry with it the right to the land; such sale would, at most, confer on the purchaser of the certificate the right to appropriate so much of the survey as had not already been disposed of by his vendor to other persons.

If it was competent for the vendor of the certificate thus to transfer the right to it as between himself and his vendee, a subsequent purchaser of the land, without notice, would be unaffected by it.

ERROR from Harrison. Tried below before W. B. Ochiltree, Esq., as special judge, by agreement of counsel; the district judge being disqualified to sit in the case.

Edward Smith instituted this suit against James Tucker in the ordinary form of an action of trespass to try title for twenty-six labors of land, surveyed by virtue of certificate No. 387, issued by the board of land commissioners of Shelby county, to B. F. Hooper; the field notes of which were set out in the petition.

Smith v. Tucker.

The defendant pleaded the general issue, and set up title to two tracts embraced within that claimed by plaintiff, by virtue of files of certificates in the year 1849, consisting of a file by T. H. Weathersby, upon seven hundred and thirty-seven and 32-100 acres; and another by said defendant on three hundred and twenty acres; both of which files were designated by bounds set forth in the answer.

In 1838 Benjamin F. Hooper obtained from the board of land commissioners of Shelby county, his headright to certificate No. 387 for one league and labor of land, and on the 29th of April, 1838, the league and labor of land in controversy in this suit was surveyed by virtue of said certificate; and afterwards, in due time, the field notes of the survey were approved, filed and recorded in the office of the county surveyor. The travelling and local commissioners failed to recommend said certificate for a patent, and on the 3d day of May, 1841, Hooper established its genuineness and legality by the judgment of the District Court of Shelby county.

On the 29th day of August, 1842, Hooper conveyed to C. M. Adams and to Isaac Vanzandt, respectively, two tracts of land out of said survey, consisting of seven hundred and sixty-seven and a half acres each. Hooper had also, in 1838, sold and executed to other parties his bond to make title to two other tracts of land out of said league and labor, of seven hundred and forty acres each.

In January or February of the year 1845, Hooper sold to Robert G. Cartwright his headright certificate, (original and as confirmed by the District Court,) and in the summer of the same year Cartwright sold the same to Richard Waterhouse, who continued to own and possess the same. On the 10th of November, 1845, the original field notes of his survey being in the office of the county surveyor of Harrison county, Hooper made on them the following endorsement:

" This is to certify and declare that the annexed field notes and plat for twenty-six. labors of land, surveyed for me by James Rowe, on the 29th day of April, 1838, is now removed and abandoned by me forever, as I have applied to the general land office for a patent, and was rejected by the government for litigation and

divers other causes. Now be it known. that I have this day sold my certificate No. 387, issued by the board of land commissioners for Shelby county, which makes my survey null and void to all intents and purposes forever. The 10th day of November, 1845.

"B. F. HOOPER."

The plaintiff claimed the land under a sale made by the sheriff on execution against Hooper, on the 3d day of February, 1846; and also under a deed from C. M. Adams for the seven hundred and sixty-seven and a half acres, (the same which was conveyed by Hooper to Adams,) dated May 7, 1845.

The plaintiff, after his purchase at sheriff's sale, made oath that he "was the owner of the original field notes of the survey in Harrison county, on the headright certificate of Benjamin F. Hooper, and that the said original field notes have been lost," and upon this affidavit he obtained from the district surveyor of Harrison land district, a certified copy from the record of said field notes; and upon this copy he obtained a patent for said land, dated the 14th day of January, 1854, in the name of Benjamin F. Hooper.

The judge charged the jury in substance that a survey of vacant land by a valid claim or certificate established by a decree of the District Court, is an interest that may be sold under execution, and that the purchaser is entitled to maintain an action of trespass to recover the land by virtue thereof; and that a patent to the land subsequently obtained in the name of the grantee, will enure to the benefit of the purchaser. That as to portions of the land conveyed by Hooper to other persons previously to plaintiff's title under the sheriff's deed, the plaintiff could not recover, unless through conveyances from them. That "the defendant relied upon an abandonment of the survey by the grantee of the certificate, B. F. Hooper. It has been decided, as a general principle, by the Supreme Court that a party having a survey upon public domain, may lift or abandon his location. I charge you that if a party have a location upon public domain of the State, which is wholly and entirely within his own control, in no manner, form or shape involving the rights of third parties, may he lift his location and sell and dispose of his certificate to whom-

soever he chooses, to be again located upon vacant land; but if a party locates a certificate upon public land, and it is surveyed and the field notes returned and recorded, and the locator aliens and conveys any part of the land by deed or bond for title, he puts it out of his power, without the consent of his vendees, to lift or abandon his location. From this proposition it follows that any sale subsequently made of the certificate thus located, disconnected with the lands to which it appertains, and in which it is merged, carries no title as against lawful purchasers of the land located, without notice of the sale of the certificate. If, then, the jury believe that Hooper did locate his headright certificate for one league and one labor of land, and that the same was surveyed and returned to the proper land office, and was duly entered and recorded therein, and that subsequent to said location and survey, he lawfully conveyed a part of said land to third persons for a valuable consideration, he had no right to subsequently abandon said survey without the consent of said purchasers."

The defendant asked the court to charge the jury that "if they believed, from the evidence, that Hooper sold, transferred and delivered to Cartwright his headright certificate, and that the same was sold by the latter to Waterhouse at any time previous to the levy and sale under which the plaintiff claims the land in controversy in that case, Hooper had no title to said land at the time of the levy and sale; the plaintiff acquired no title thereby, and the plaintiff cannot recover in this suit.

"That if they believed, from the evidence, that Hooper sold to C. M. Adams seven hundred and sixty-seven and a half acres of the land in controversy, in August, 1842, the deed to which was not recorded until after Cartwright and Waterhouse had purchased from Hooper his headright certificate for a valuable consideration, and they had no notice of said deed or sale, that Cartwright and Waterhouse were innocent purchasers, and acquired thereby a legal and valid title to said headright certificate, and the plaintiff cannot recover in this suit;" which charges the court refused to give.

Waterhouse had no notice of any previous surveys or transfers,

or of the location, as stated by him on his examination as a witness for the defendant; and stated that he had never claimed the land in controversy, he having bought the certificate only.

The plaintiff introduced in evidence the deed from Hooper to Adams, dated August 29, 1842, recorded 25th December, 1855, for seven hundred and sixty-seven and a half acres, setting forth by metes and bounds the said tract, beginning at one of the corners of said Hooper league and labor survey, and running with certain of its lines, and embracing the number of acres called for by the deed. He also introduced a deed to the same land from Adams to the plaintiff, dated May 7, 1845, and recorded July 16, 1845.

The verdict of the jury was as follows: "We, the jury, find for the plaintiff the land described in the petition, less seven hundred and sixty-seven and a half acres, as described in the deed read in evidence from B. F. Hooper to C. M. Adams." Judgment was rendered for the plaintiff.

The statement of facts has not the approval of the presiding judge endorsed thereon; the foregoing abstract of some of the facts from it is, nevertheless, essential to be made for a comprehension of the latter portion of the opinion of the chief justice which hereafter follows. The other facts and questions in the record need not, under the view taken of the same by the court, be stated in this place.

The plaintiff in error assigns as error the charge given by the judge, and his refusal to give the charges asked for by the defendant.

*W. P. Hill*, for the plaintiff in error.—The third proposition, that "at and before the levy and sale, Hooper had ceased to have any interest in the land, which was to be levied upon and sold under the *fi. fa.* in favor of Smith," presents some interesting questions decisive of the case. That Hooper had, as far as intention and overt act could enable him to do so, abandoned all claim to and interest in the land, before the levy and sale, will not even be contested.

In January or February, 1845, he sold and delivered, for a

valuable consideration, his headright certificate to Robert G. Cartwright. On the 10th of Nov., 1845, he recorded upon the original field notes his abandonment of them and the survey, in terms, the import of which cannot be mistaken.

He had precluded even the possibility of again asserting claim to said land as his headright, or of taking any steps to obtain a patent from the government. In a contest with any opposing claimant of the land, he would have been powerless, either for attack or defence, because he was disarmed, having neither shield nor sword. But the issue made is, that Hooper having sold different parcels of the land, could not abandon the survey or any part of it, or dispose of any of the muniments of his title. And to this effect was the charge of the court: " I charge you that if a party have a location upon public domain of the State, which is wholly and entirely within his own control, in no manner, form or shape involving the rights of third parties, he may lift his location and title and dispose of his certificate to whomsoever he chooses, to be again located on public land. But if a party locates a certificate upon public land, and it is surveyed and the field notes returned and recorded, and the locator delivers and conveys any part or portion of said land by deed or bond for title, he puts it out of his power, without the consent of his vendees, to lift or abandon his location; and, if I am correct in this, it follows, as a consequence, that any sale subsequently made of the certificate thus located disconnected with the lands to which it appertains, and in which it is merged, carries no title as against lawful purchasers of the land located without notice of the sale of the certificate. If, then, the jury believe that B. F. Hooper did locate his headright certificate for a league and a labor of land, and that the same was surveyed and returned to the proper land office and was duly entered and recorded therein, and that subsequent to said location and survey he lawfully conveyed a part or portion of said land to third persons for a valuable consideration, he had no right to subsequently abandon said survey without the consent of said purchasers."

I quote the entire charge upon this point. It is broad, without qualification; and is, I submit, full of fallacies.

1. The right to lift a certificate and abandon a survey is established by this court, in the following cases: Simpson v. McLemore and Parr v. Price.

The corollary from this doctrine is, that the certificate is not merged in the land, by the location and survey, and may be disconnected from it.

I concede that, as between the grantee of the certificate and his vendees of parcels of land, the former cannot lift the certificate and abandon the survey without the consent of the latter, provided the vendees assert, in a legal way, their vested rights.

But it is equally indisputable that, as between the grantee and all other persons not affected with notice, the removal of the certificate and the abandonment of the land may be consummated. This is well settled by the cases referred to.

Now, let us test the operation of this principle upon the facts of the case. Hooper determined, in January 1845, to remove his certificate and abandon his survey. Who can object? Certainly Adams, Vanzandt or Yates may object, as to so much of the land as they have purchased from Hooper. Beyond their own interest in the land they cannot object, and surely no one else can. As to the interest not sold by Hooper, he may do as he pleases. The act of abandonment is completed. Adams, Vanzandt and Yates acquiesce, and if they do not object for themselves, can any stranger be heard to object for them? But Adams objects and Vanzandt and Yates do not, then as to the latter the abandoment stands in full force, while it may be inoperative to the extent of the former's interest. Hooper is estopped by his own act. From him the land is gone beyond the power of recall. How shall he regain it? If the certificate is restored to the land, at the instance of Adams to preserve his right in it, it is restored not to reinvest Hooper with title, but certainly for the benefit of the person to whom he has transferred it. If Hooper was cut off from the land, how can any person, claiming from him, especially through a sheriff's sale, become entitled to it.

2. Hooper sells his certificate to Cartwright in January 1845, for a valuable consideration. Adams and Vanzandt afterwards demand of Hooper to restore it to its place upon the land. Hooper

can only say, "It is not in my power. I have sold and delivered it to Cartwright for its value, and cannot reclaim it if I would." They then demand of Cartwright the restoration of the certificate, and he may well answer them, "I am a purchaser in good faith, for a valuable consideration. I had no notice of your purchase of a part of the land. If you have deeds they are in your pockets, not on record, and how could I know or suspect that you had any interest in this certificate?" And this answer would be conclusive against them. The effect of notice, or the want of notice in such cases is strongly put in the following cases: Emmons v. Oldham, 12 Tex., 30; York v. McNutt, 16 Tex.

That a *bona fide* purchaser for a valuable consideration will be fully protected, is declared by statute, and is an axiom in jurisprudence. (Hart. Dig., 2765–7; 1 Story Eq., § 381; Dart on Vendors, 389; Sugden on Vendors, 506.

If the doctrine in the charge is the law, then Hooper could, at any time, have sued Cartwright or Waterhouse and have recovered back his certificate, simply upon the ground that he had previously sold parcels of the land to others. The proposition is really too absurd for discussion. And as before stated, Adams and Vanzandt could not question the sale to Cartwright, because he was an innocent purchaser, and as to Yates, he has always acquiesced, and what right has Smith to speak for him? Indeed Vanzandt has not objected, and as to him, Smith cannot be heard. Adams did sell to Smith in 1845, after the sale to Cartwright, but even Smith has never questioned or assailed, by any suit or proceeding, the title of Cartwright or Waterhouse to the certificate, and to this day Waterhouse possesses and claims it as his own. But if Adams, by his purchase of 767½ acres of the land was entitled to reclaim the certificate *pro tanto*, and he transferred his right to Smith, he or Smith could only enforce such a right to the extent of the land purchased. This parcel is in the S. E. corner of the league and labor, and is not in conflict with the premises of the defendant; and, even as to this parcel, the jury say he is not entitled to recover. This is the only parcel sold by Hooper, which could, under any circumstances, have entitled Smith to reclaim any part of the certificate, or to oppose the abandonment

of the survey by Hooper, and from this he is excluded by the verdict.

I suppose I am not required to argue or maintain the proposition, that Smith only acquired such right, title or interest in the land or any part of it, as vested in Hooper at the time of the levy and sale. (Johnson v. Payne, 1 Hill's S. C., 111; Crocker on Sheriffs, 202; 8 Johns. R., 334; 15 Barbour R., 568.

That Hooper had only an equitable title to the land at the time of his abandonment of it, is not an open question. But when was the abandonment complete so as to divest Hooper of his equitable title?

I answer, when he put himself into a position to render it impossible for him to do what the law required of him to enable him to perfect his title to the land. This occurred when he sold and delivered his headright certificate to Cartwright. And again, when he wrote said statement on the original field notes. By either, and of course by both of these acts, he put it out of his power to hold the land, or to obtain the title to it. Whether the certificate was of value to Cartwright or Waterhouse, is not the question; it was thenceforward of no value to Hooper, and with it went from him all vestige of claim to the land. The fee continues in the government, and to Hooper it never can pass, because the only evidences of claim to it have gone from him forever. If they have been lost, the affidavit and publication of loss, and the issue of copies would have restored them, but the government itself could not recognize or restore his rights lost to him, by the sale and abandonment aforesaid.

What other act could he have performed to give more complete effect to his abandonment? He had ceased to claim the land, and avowed that he did not and would not claim it; he did not and would not take possession of it; he voluntarily and for value sold and transferred the only evidences which could exist of his claim to the land; and upon an indispensable muniment of his title—the field notes—he had recorded his renunciation.

Or, the argument could be put in another view. Hooper surely could convey whatever interest he might have in the land. If the certificate was merged in the land, then Cartwright took the land

Smith v. Tucker.

with the certificate; and if by previous transfers others were interested in the land, of which he had notice, then he took for himself and them, with the trust to perfect the equitable title, for his and their benefit. But if the certificate could be detached from the land, then he took the certificate only, and the land reverted to the public domain, unless former vendees of the land were in a condition to assert, and did assert their right to a *pro tanto* restoration of the certificate.

In either point of view, Hooper had no vestige of title to or interest in the land, at the time of the levy.

*G. Lane*, for defendant in error.

WHEELER, C. J.—There is the same defect in the verdict in this case as in the case of Mays v. Lewis, 4 Tex. R., 38.

It does not find the facts essential to support the judgment, but refers the court to the evidence given upon the trial to render certain the finding of the jury. In Mays v. Lewis it was held that no judgment could be rendered upon a verdict which found for the plaintiff " the full amount specified in the promissory notes adduced in the case," because the verdict referred to the evidence to ascertain the amount found by the jury, and could not be rendered certain by reference to the pleadings. The verdict in this case finds for the plaintiff " the land described in the petition, less seven hundred sixty-seven and a half acres, as described in the deed read in evidence from B. F. Hooper to C. M. Adams." The pleadings contain no description of the land conveyed by this deed, and hence it became necessary for the court to look outside of the verdict and the pleadings to the evidence given upon the trial for the facts upon which to render judgment. The deed from Hooper to Adams must be looked to to help out the verdict and render it certain what part of the land it was the jury meant to include in their finding for the plaintiff. It was the land described in the petition, *less seven hundred and sixty-seven and a half acres*, but out of what part of the tract, or by what boundaries the land thus excepted out of the findings for the plaintiff should be taken, and consequently by what boundaries or descrip-

tion the court should give judgment for the plaintiff for the residue, could only be ascertained by reference to the deed. It is plain, therefore, that the court gave judgment upon the evidence, and not upon the verdict. It is the province of the jury to find the facts from the evidence, and of the court to give judgment upon the findings of the jury. There can be nothing clearer or better settled than that a verdict, which is not so certain that the court can give judgment upon it without looking out of the record to the evidence given upon the trial, will not support a judgment. As the verdict in this case has not such certainty, it results that the judgment must be reversed and the cause remanded for a new trial.

We observe that the statement of facts has not the approval of the presiding judge, as the statute requires. (O. & W. Dig., Art. 548.) This omission was probably an oversight. But it may be that the statement was not, in fact, approved. And in the present state of the record, we do not think proper to revise the charge of the court, or the other questions sought to be raised upon the record.

As the question of the right of abandonment by Hooper, is a question vital to the cause and which must almost necessarily arise upon another trial, it is proper to say that we concur with the court below in the opinion that, after selling and conveying away portions of the land embraced in his survey, Hooper had not the right to abandon his location, and sell or otherwise dispose of the certificate in prejudice of the rights of his former vendees. The sale of the certificate did not carry with it the right to the land, as that was not in contemplation of the parties, and was not intended to be conveyed. At most, it conferred the right to appropriate so much of the survey as had not already been disposed of by Hooper, and no such attempted appropriation is shown. If it was competent for Hooper thus to transfer the right to the certificate as between himself and his vendee, a subsequent purchaser of the land, without notice, would be unaffected by it.

The judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.