Pecos & Northern Texas Railway Company v. W. L. Hughes et al.

Decided November 3, 1906.

**1.—Market Value—Testimony.**

Where in a suit for damages to a shipment of horses it appeared from the testimony of the plaintiff that his knowledge of the market value of said horses at their destination at the time they should have arrived there was but a reproduction of what had been communicated to him by letters and telegrams received from persons living in that neighborhood who were not shown to have had any knowledge themselves of said market, the testimony should have been excluded, and this, although the witness freely and repeatedly stated that he knew the market value.

**2.—Shipping Contract—Invalid.**

A clause in a shipping contract arbitrarily fixing the amount of damages which the shipper might recover, is void as against public policy. And so of a clause relieving the carrier from damages resulting from certain named risks and from "any and all other causes whatever."

**3.—Designation of Route—Deviation.**

When a carrier deviates a shipment from the route designated by the shipper it thereby deprives itself of the exemptions contained in the shipping contract.

Appeal from the District Court of Potter County. Tried below before Hon. Ira Webster.

*Madden & Trulove,* for appellant.—In the absence of evidence showing that Hughes was in possession of such information as would enable him to know the market value of the horses at Augusta, at the time when they should have arrived there, and it appearing from the evidence that he could not have had any such knowledge of the facts as would enable him to know such market value, his evidence as to such market value was necessarily an opinion, estimate or guess, and incompetent and inadmissible. Railway Company v. Maddox, 75 Texas, 300; Texas & P. Ry. v. Crowley, 12 Texas Ct. Rep., 690; Missouri, K. & T. Ry. Co. v. Allen, 13 Texas Ct. Rep., 304; Texas & P. Ry. Co. v. Arnett, 13 Texas Ct. Rep., 547; Texas & N. O. Ry. Co. v. White, 62 S. W. Rep., 133; Cameron M. & E. Co. v. Anderson, 78 S. W. Rep., 971.

That the nature, interpretation and obligations (including the validity of particular stipulations) of a contract made in one State or country for the transportation of property from a point in such State or country to a point in another, are governed by the laws of the State or country in which the contract is made and the transportation commences, see, Pittman v. Pacific Express Co., 24 Texas Civ. App., 595; Mexican Nat. Ry. Co. v. Ware, 60 S. W. Rep., 343; Southern Pac. Co. v. Anderson, 63 S. W. Rep., 1023; Hughes v. Penn. Ry. Co., 63 Law Rep. Ann., 513; 2 Wharton C. L., p. 1063, sec. 471b. That the written contracts govern, see, Hoover v. St. Louis S. W. Ry. Co., 88 S. W. Rep., 769.

Where horses are shipped interstate under shipping contracts limiting

the liability of each connecting carrier to its own line, evidence of acts and transactions transpiring and causing damages after the stock have passed over and left one of the carrier's line, is not admissible against such carrier and prior lines as a basis for recovering damages against them for acts of the succeeding carrier. McCarn v. International & G. N. Ry. Co., 84 Texas, 352; Gulf, C. & S. F. Ry. Co. v. Looney, 85 Texas, 159; Galveston, H. & S. A. Ry. Co. v. Short, 25 S. W. Rep., 142.

The nature, interpretation and obligations (including the validity of particular stipulations) of a contract made in one State or country for the transportation of persons or property from a point in such State or country to a point in another, are governed by the laws of the State or country in which the contract is made and the transportation commences. Pittman v. Pacific Ex. Co., 24 Texas Civ. App., 595; Mexican Nat. Ry. Co. v. Ware, 60 S. W. Rep., 343; Southern Pac. Co. v. Anderson, 63 S. W. Rep., 1023; Hughes v. Penn. Ry. Co., 63 Law Rep. Ann., 513; 11 Wharton Con. L., p. 1063, sec. 471b.

*Barrett, Stewart & Templeton,* for appellees.—A witness may testify to market value from information derived from market reports, letters, telegrams, etc., giving the condition of the market at a given time and place. Texas Cent. Ry. Co. v. Fisher, 43 S. W. Rep., 584; Texas & P. Ry. Co. v. Donovan, 23 S. W. Rep., 735; Same case (Sup. Ct.), 25 S. W. Rep., 10; Gulf, C. & S. F. Ry. Co. v. Patterson, 24 S. W. Rep., 349; Gulf, C. & S. F. Ry. Co. v. Russell, 23 S. W. Rep., 527; Gulf, C. & S. F. Ry. Co. v. Wedel, 42 S. W. Rep., 1031.

That provision of the so-called written contract which purports to limit the value of the stock in question, in case of loss or damage thereto, to the actual cash value of same at the time and place of shipment not to exceed twenty dollars per head, if sustained would relieve the defendants pro tanto from the consequences of their own negligence. Such a provision is contrary to the public policy of this State and same will not be enforced even if it were authorized and held to be valid under the laws of New Mexico. Southern Pac. Ry. Co. v. Maddox, 75 Texas, 300; Southern Pac. Co. v. Anderson, 63 S. W. Rep., 1024; Gulf, C. & S. F. Ry. Co. v. Eddins, 26 S. W. Rep., 162; Galveston, H. & S. A. Ry. Co. v. Ball, 80 Texas, 605 and 606; Taylor, B. & H. Ry. Co. v. Montgomery, 16 S. W. Rep., 182; Houston & T. C. Ry. Co. v. Williams, 31 S. W. Rep., 558.

That the laws of other States will not be enforced by the courts of this State when they are contrary to the public policy of this State, see: Sanger v. Jesse French Piano Co., 52 S. W. Rep., 622; Building & L. Assn. v. Griffin, 39 S. W. Rep., 656; Western U. Tel. Co. v. Lovely, 52 S. W. Rep., 564; Chicago, R. I. & P. Ry. Co. v. Thompson, 93 S. W. Rep., 702.

The undisputed proof showed that the defendants misrouted the stock at Amarillo and sent same over their own line and over the line of the St. Louis & San Francisco Ry. Co. by way of Cherryvale, Kan., and East St. Louis instead of sending same as directed by plaintiffs. Wherefore, said defendants made said last named company their agent to carry said stock over its line and they thus became responsible for the consequences of the negligence of said company. San Antonio & A. P.

Ry. Co. v. Stribling, 86 S. W. Rep., 374; Same case, Sup. Ct., 89 S. W. Rep., 963; Texas & Pac. Ry. Co. v. Boggs, 40 S. W. Rep., 21; Galveston, H. & H. Ry. Co. v. Allison, 59 Texas, 193.

The laws of other States will not be enforced by the courts of this State when such laws are contrary to the public policy of this State or where their enforcement would be in violation of the statutory laws of this State. In such cases the law of the forum will govern, and the validity of such contracts will be determined by the laws of this State. Sanger v. Jesse French Piano Co., 52 S. W. Rep., 622; Western U. Tel. Co. v. Lovely, 52 S. W. Rep., 564, and authorities there cited.

The third, sixth, eighth and ninth paragraphs of the contract in question all related to the remedy only and same will be construed and governed by the laws of this State regardless of the laws of New Mexico. Missouri, K. & T. Ry. Co. of Texas v. Godair Com. Co., 87 S. W. Rep., 871; Armstrong v. Galveston, H. & S. A. Ry. Co., 46 S. W. Rep., 33; Burgess v. Western U. Tel. Co., 46 S. W. Rep., 794; Reeves v. Texas & P. Ry. Co., 32 S. W. Rep., 920; Missouri Pac. Ry. Co. v. Harris, 67 Texas, 170, and authorities there cited.

It was the duty of the defendants to route the stock as requested by the plaintiffs regardless of any contract so to do. San Antonio & A. P. Ry. Co. v. Stribling, 86 S. W. Rep., 374; Same case, 89 S. W. Rep., 963.

STEPHENS, Associate Justice.—W. L. Hughes and B. F. Peeples sued appellant and several other railway companies for damages and recovered judgment against appellant for eleven hundred and fifty-one dollars, from which this appeal is prosecuted, and against the Pecos Valley & Northeastern Railway Company for one hundred and fifty dollars, from which no appeal was taken. The ground of recovery against appellant was its failure to deliver to its succeeding carrier a car of horses shipped by Hughes and Peeples from Roswell, New Mexico, to Augusta, Georgia, via Amarillo, Fort Worth and New Orleans. Instead of delivering this car of horses to the Fort Worth & Denver City Railway Company at Amarillo, as appellant, according to the contention of the appellees, had undertaken to do, it there arbitrarily changed the route originally designated by appellees and known as the southern route, by writing "Cherryvale, Kansas," on the way bill, and then delivered the horses to the Southern Kansas Railway Company of Texas. When the horses reached St. Louis over the route to which they had thus been deviated, known as the northern route, they were so badly damaged that the next carrier refused to receive them and they had to be sold for what they would bring there, which was nothing of consequence, as they had become practically worthless. One important ruling was made by the trial court in the admission of testimony, at the persistent insistence of counsel for appellees and over the objections of counsel for appellant, which we have been unable to approve, the court twice correctly holding in the course of a long preliminary examination and cross examination, that W. L. Hughes, on whose testimony alone the appellees relied to prove the value of the horses at the place of destination, had not qualified himself to testify as to the market value of the horses there, but finally, and erroneously we think, holding that he had. To sustain this ruling counsel for appellees quote from the

stenographers' notes more than a dozen printed pages of questions and answers taken down in the course of said preliminary examination, which is itself suggestive of a want of knowledge on the part of a witness interested in qualifying himself, else much less space would have been required. These questions and answers, which are too numerous to be here quoted, have been carefully read and considered in consultation, and while the case lies near the border line between the admissible and inadmissible, we have reached the conclusion that we could not approve the ruling complained of without disregarding the following precedents cited by counsel for appellant in opposition to it: Southern Pac. Ry. Co. v. Maddox, 75 Texas, 300; Texas & P. Ry. v. Crowley, 12 Texas Ct. Rep., 690; Missouri, K. & T. Ry. v. Allen, 13 Texas Ct. Rep., 304; Texas & P. Ry. v. Arnett, 13 Texas Ct. Rep., 547; Texas & N. O. Ry. v. White, 1 Texas Ct. Rep., 742, and Cameron M. & E. Co. v. Anderson, 9 Texas Ct. Rep., 333. True, in answering these questions Hughes freely and repeatedly stated that he knew the market value of the horses in question at Augusta, Georgia, at the time they should have arrived there, but other answers made by him disclosed that his knowledge of the horse market at that time and place was but a reproduction of what had been communicated to him through letters and telegrams received from persons in Georgia and South Carolina, who were not even shown to have had any knowledge of the Augusta market. For instance, he had been in correspondence with his partner, B. F. Peeples, who lived in South Carolina, about forty miles from Augusta, the market to which he shipped his cotton and other farm products, and also with his brother-in-law and one Mr. Dykes, a horse dealer. They seem to have given him information as to the state of the horse market at Augusta a short while before he shipped the horses in question and as to whether it would be advisable to ship to that market. From this it may be inferred, perhaps, that his communicants knew or had investigated the market at Augusta, and might themselves have been competent witnesses, but what they wrote and wired him was clearly inadmissible. (Western U. Tel. Co. v. Bradford, 91 S. W. Rep., 818.) In addition to this, Hughes had sold horses on the Augusta market the year before and had since occasionally noticed sales of horses in a newspaper sent him in New Mexico, where he lived, from Augusta and in one published in a town thirty miles from Augusta, but these papers did not purport to contain market reports. He also made inquiries in Augusta a year later, of persons who had had an opportunity to know, as to what had been the state of market the previous year. There are authorities which seem to hold that a witness might thus qualify himself to testify as to market value at a given time and place, but we understand the decisions of our Supreme Court to be against this view. Taken altogether, the preliminary examination of W. L. Hughes, in our opinion, did not warrant the admission of his testimony as to market value in Augusta, Georgia, of the horses in question at the time they should have arrived there. Evidently this fact was susceptible of proof otherwise, and we would not be warranted in stretching the rules of evidence to relieve a situation which, for aught that appears, might easily have been avoided by the appellees.

As to the validity and effect of the shipping contract pleaded by ap-

pellant, two of the three clauses relied on, one arbitrarily fixing the amount of the damages and the other entirely relieving the carrier from damages resulting from certain named risks and from "any and all other causes whatever," are contrary to public policy as declared by the Supreme Court of this State. The validity of a clause similar to the third is involved in the case of Railway v. Evans, Snider, Buel Co., now pending in that court on writ of error. Whether provisions in a shipping contract limiting the liability of a common carrier so as to even relieve it, in a measure at least, from the consequences of its own negligence, should be upheld by the courts of Texas where, as in this instance, such provisions are valid in the jurisdiction where the contract was made, is the question we are asked to decide; but inasmuch as the liability of appellant in this case depended on deviation, as above indicated, that alone would deprive it of the exemption claimed. (4· Elliott on Railroads, sec. 1515.) We need not, therefore, determine the question submitted.

Because of the erroneous ruling on the admission of testimony, the judgment is reversed and the cause remanded.

*Reversed and remanded.*