HOUSTON PACKING CO. v. GRIFFITH.

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1914.)

1. TRIAL (§ 333*)—VERDICT—DESIGNATION OF AMOUNT.
A verdict, "We, the jury, find for plaintiff damages to amount of $1,732.26, less freight," was too uncertain to be the basis of a judgment, since reference to the evidence was required to ascertain the freight.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 784, 786; Dec. Dig. § 333.*]

2. APPEAL AND ERROR (§ 1153*)—JUDGMENT (§ 198*)—VERDICT—RENDERING JUDGMENT.
When a verdict is too uncertain to support a judgment, neither the trial court nor the appellate court can enter judgment thereon, since to do so would be to make the verdict for the jury.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4507–4512; Dec. Dig. § 1153;* Judgment, Cent. Dig. §§ 362, 363; Dec. Dig. § 198.*]

3. EVIDENCE (§ 441*)—PAROL EVIDENCE—CONTRADICTING CONTRACT OF SALE.
Where a clause in a written contract for the sale of cattle provided that the purchaser would not have to take any cattle that did not get fat, parol evidence was not admissible to show that there was a parol agreement that the purchaser was to be the sole judge of whether they were fat, since this would materially vary the contract.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845; Dec. Dig. § 441.*]

4. APPEAL AND ERROR (§ 971*)—REVIEW—OPINION EVIDENCE—MARKET VALUE.
The action of the trial court in admitting witnesses as competent to testify as to market value will not be revised in an appellate court so long as reason has been exercised.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3852–3857; Dec. Dig. § 971.*]

5. APPEAL AND ERROR (§ 842*)—MARKET VALUE—NEWSPAPER QUOTATIONS.
Where newspaper market quotations were offered in evidence to prove the market value of cattle in a city upon a certain date, an issue of fact was made as to whether the quotations were credible.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3316–3330; Dec. Dig. § 842.*]

6. EVIDENCE (§ 142*)—MARKET VALUE—NEWSPAPER QUOTATIONS.
Newspaper market quotations could not be rejected as evidence of the market value of cattle in controversy because they referred to a different class of cattle; there being evidence that the class of cattle in controversy were as valuable as the class referred to in the newspapers.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

7. EVIDENCE (§ 323*)—MARKET VALUE—NEWSPAPER QUOTATIONS.
Where newspaper market quotations were offered as evidence of market value and it was shown that the quotations were based upon information furnished by one dealer alone, the quotations should have been rejected as mere individual hearsay.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1214–1217; Dec. Dig. § 323.*]

8. EVIDENCE (§ 543*)—OPINION EVIDENCE—MARKET VALUE.
In an action for breach of a contract of sale of cattle plaintiff was properly permitted to express an opinion as to market value of cattle in Houston, where he had knowledge of the market in Ft. Worth and had made a comparison of the two markets.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

9. EVIDENCE (§ 151*)—MARKET VALUE—NEWSPAPER QUOTATIONS.
Where newspaper market quotations were admitted in evidence to prove market value, witnesses were properly permitted to testify that they relied upon such newspaper quotations; it being admissible upon the issue of the credit to be given the quotations.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 440; Dec. Dig. § 151.*]

10. EVIDENCE (§ 318*)—MARKET VALUE.
Letters from two commission merchants were not admissible as evidence of market value.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. § 318.*]

11. EVIDENCE (§ 183*)—BEST AND SECONDARY EVIDENCE—GROUNDS FOR ADMISSION OF SECONDARY EVIDENCE.
The loss of letters must be shown before a witness can testify as to their contents.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 605–637; Dec. Dig. § 183.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

12. EVIDENCE (§ 543*)—OPINION EVIDENCE—
MARKET VALUE.

Where, in an action for breach of a con-
tract for the sale of cattle, a witness had no
knowledge of the local market except the mar-
ket quotations in the newspapers, he was not
qualified to express an opinion as to such val-
ue, yet, as he was experienced in the cattle
business, he was qualified to express an opinion
of the comparative value of the class of steers
in controversy and the class referred to in the
market quotations.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

Appeal from District Court, Wilson Coun-
ty; F. G. Chambliss, Judge.

Action by W. D. Griffith against the Hous-
ton Packing Company. From a judgment for
plaintiff, defendant appeals. Reversed and
remanded.

See, also, 144 S. W. 1139.

Hutcheson & Hutcheson, of Houston, and
O. A. McCracken, of Floresville, for appel-
lant. J. Ed Canfield and J. Albert King,
both of Floresville, and J. B. Dibrell and
Emil Mosheim, both of Seguin, for appellee.

MOURSUND, J. Appellee and appellant,
by its agent, M. D. Bennett, entered into
a written contract, reading as follows: "San
Antonio, Texas, January 18, 1909. Houston
Packing Company, Houston, Texas. Dear
Sirs: I have bought from Wm. Griffith, at
Floresville, 200 steers that are now being
fed on meal and hulls at Floresville; also
100 steers that are now being fed on corn on
the McDaniel place, near Floresville; the
time of delivery of these steers is to begin
two cars on Feb. 1, and to be followed two
cars each week until the cattle are all ship-
ped out. We have also bought from Wm.
Griffith 175 steers that are being fed on
cotton seed and sorghum on the McDaniel
place near Floresville, and 105 that are being
fed on cotton seed on the Tullos place, near
Floresville. The final delivery of these steers
is to be not later than June 15th, and we
have the privilege of taking any of them at
any time that we may want them. It is
agreed that we do not have to take any
steers that do not get fat. The purchase
price of these different lots of steers is four
and 60-100 dollars, to be weighed and de-
livered to the Houston Packing Company, in
their pens in Houston, Texas, in good con-
dition. M. D. Bennett. Wm. D. Griffith."
On September 22, 1909, appellee filed this
suit, alleging that the first two lots of cattle
mentioned in the contract were shipped by
him and accepted by appellant; that appel-
lant sent its agent to Floresville to cut and
receive the last two lots of cattle, but said
agent, after coming to Floresville, failed and
refused to cut and receive the steers, and
failed and refused to inspect them; that 250
of them were fat and in good condition, and
were according to the requirements of the
contract, and the market price of such cat-
tle in Houston on June 15, 1909, was $3.75
per hundredweight gross; that they weigh-
ed 825 pounds average per head. The pray-
er was as follows: "Wherefore plaintiff
prays judgment against the defendant for
his actual damages in the sum of $1,753.12,
with interest from June 15, 1909, at 6 per
cent. per annum to date of trial, less the es-
timated freight charges for delivering said
cattle in Houston, Tex." The amended orig-
inal answer, filed May 13, 1913, contained a
general demurrer, a general denial, and a
special answer, as follows: That the mem-
orandum of agreement set out in the petition
did not contain a complete statement of all
the terms of the contract; that it did not
purport to embrace or cover the question of
how it was to be determined, fixed, and as-
certained whether the cattle did or did not
get fat within the meaning of the contract,
but the determination of that matter was
fixed by the parties by another portion of
their agreement which rested on parol, and
which provided that defendant's agent, Ben-
nett, should inspect the cattle before deliv-
ery, and should take such cattle as in his
judgment were fat, and that his decision up-
on the matter should determine the question
between the parties, and such cattle as were
received as fat were to be taken and they
were not to be taken should said agent, in
the exercise of his judgment, declare the
same were not fat; that upon the inspection
made by Bennett it was ascertained that the
cattle were not fat, and defendant, relying
upon the decision of said Bennett, declined
to receive the cattle; that had the cattle
been of contract grade, they would have been
worth on the market in Houston on June
15th $4.85 per hundredweight or 25 cents
more than the contract price. Defendant
filed a cross-action, alleging that plaintiff
had failed to deliver fat cattle as he was
bound to do, whereby defendant suffered
damages in the sum of $600. Plaintiff ex-
cepted to that part of the answer which
set up the parol agreement for the inspection
of the cattle by Bennett, and denied the al-
legations made in the answer. The excep-
tion was sustained. The case was tried be-
fore a jury, which returned the following
verdict: "We, the jury, find for plaintiff
damages to amount of $1,732.26, less freight.
J. W. Seale, foreman." The court entered
judgment for plaintiff for $1,732.26, and de-
fendant appealed. This is the second ap-
peal in this case. See 144 S. W. 1139.

[1, 2] The first two assignments of error
question the sufficiency of the verdict as a
basis for judgment, the contention being that
the same was not definite and certain, and
could not be made certain by resorting to the
pleadings or charge, but only by resorting
to the evidence. Appellee contends that the
jury meant to say by the verdict that they
had deducted the freight, and that $1,732.26

was the net amount found by them to be due plaintiff. The argument is made that if the jury figured interest, the total amount prayed for would be $2,165.17, and that, deducting the freight $386.70, would leave $1,778.47, an amount greater than the sum awarded plaintiff by the judgment. This contention is fallacious. It is based upon giving plaintiff nearly four years' interest on the amount of the freight which would have been paid out by him before he made the profits of which he claims to have been deprived. If the freight be deducted from the $1,753.12 claimed to represent the profits, and interest be figured on the difference, it will be seen that the amount which plaintiff could have recovered was approximately $1,687.50. While the evidence shows the freight was $386.70, such fact is not admitted in the pleadings, nor mentioned in the court's charge. Paragraph 2 of the court's charge reads as follows: "If you find for the plaintiff you will give him such damages as you find he has sustained, and in arriving at the amount of such damages you will determine whether or not there was any difference between the price agreed to be paid plaintiff by defendant as expressed in the contract for his steers delivered in Houston on June 15, 1909, and the market price of such steers in Houston on said date, and such difference, if any, between the contract price and the market price of such steers in Houston on June 15, 1909, less the amount of freight required to be paid to deliver the steers in Houston, would constitute the amount of plaintiff's damages." It is evident that the jury was trying to follow this paragraph of the charge, and, after having figured the damages, they added the words "less freight" to show that the freight was to be deducted from the damages so found. The court could not render judgment upon the verdict without referring to the evidence for the purpose of ascertaining the amount to be deducted. When reference to the evidence is required, according to our decisions, the verdict is not sufficiently certain to be the basis for a judgment, even though the evidence be undisputed. Curlee v. Rogan, 136 S. W. 1126; Williams v. Smith, 98 S. W. 916; Smith v. Tucker, 25 Tex. 594; Bennett v. Seabright, 32 S. W. 1048; Brient v. Bruce, 5 Tex. Civ. App. 580, 24 S. W. 35; Blakeley v. Bldg. Ass'n, 26 S. W. 294; Burnett v. Harrington, 58 Tex. 363; Akin v Jefferson, 65 Tex. 141; Claiborne v. Tanner, 18 Tex. 78; Mays v. Lewis, 4 Tex. 45; Browne v. Fechner, 159 S. W. 465.

The case of Mays v. Lewis, supra, is the only case decided by our Supreme Court, cited by appellee in support of the verdict in this case. The verdict in that case was for full amount of the notes "adduced in the case," and drawn by defendant in favor of plaintiff. The court said, in part: "Now, if the jury meant, as I believe they clearly did, the notes read in evidence, we should be * * * at a loss to say what notes, whether two, or all three of the notes set forth in the petition, or some other notes." A reference to the evidence would probably have shown that the notes in evidence were those described in the petition, so it seems the court was of the opinion that the evidence could not be referred to. Such has been the construction placed upon the opinion by our courts. See the case of Smith v. Tucker, supra, in which the verdict could have been made certain by referring to the description of a tract of land contained in a deed which was in evidence, but the court held it could not be done. It appears clear that under the authorities cited the court could not look to the evidence in this case to fix the amount of the freight on the cattle, because to do so would be to give judgment upon the evidence, and not upon the verdict. Appellee suggests that if we find that the jury intended to have the freight deducted, we could require a remittitur of the amount thereof, and thus cure the error in the judgment. If the verdict had named the sum to be deducted, we could correct the error, but when a verdict is too uncertain to support a judgment, neither the trial court nor this court can enter judgment thereon. To do so would be to make the verdict for the jury, which is not permitted.

Assignments 3 to 6 raise the issue of excess in the judgment. As we have held that the verdict will not support a judgment, it is unnecessary to further discuss the matter presented by these assignments.

[3] The seventh assignment questions the ruling of the court in striking out that part of defendant's answer wherein he pleaded that it was agreed by parol for Bennett to determine whether the steers were fat. So many exceptions have been recognized to the rule that parol evidence is not admissible to vary or contradict a written agreement that it has become a difficult question to determine whether the rule is applicable in a given case. The change sought to be made would make the contract read that, instead of the question whether the cattle were fat being determined like any other question in the case, the same would be determined primarily by Bennett, and his decision would be final unless he failed to act in good faith. This would materially change the contract, and we think should not be permitted. The sole matter contracted about was the sale of the cattle. The matter sought to be proved did not involve a transaction constituting part of an original verbal entire contract, of which only a part was reduced to writing, but a matter directly qualifying a clause, and one of the important clauses, of the written contract. It provides for something inconsistent with what has been expressly stated, as it seeks to change the contractual obligations of the parties on the material question of what is required to be performed to com-

ply with the contract. The assignment is overruled. Whitaker v. Willis, 146 S. W. 1004; Fish Bros. Wagon Co. v. Adams, 146 S. W. 704; Boone v. Mierow, 33 Tex. Civ. App. 295, 76 S. W. 772.

[4–7] The eighth and ninth assignments relate to the admission of evidence upon the issue of market value. Whether evidence offered to prove such value is relevant is frequently a most difficult question, and one in the determination of which a certain amount of discretion is vested in the trial court. "The action of a trial judge in admitting witnesses as competent to testify on the question of value will not be revised in an appellate court, so long as reason has been exercised. * * * Should it appear that the action of a trial judge is unreasonable, and that prejudice has ensued, the appellate court may be compelled to reverse the judgment. Thus, should the preliminary detail of facts stated by the witness be rationally insufficient to warrant affirmative action by the jury in accordance with the estimate based upon it, the appellate court may be justified in setting aside the result reached by the trial judge. * * * Where the facts upon which the trial judge has acted are uncontroverted, the right of an appellate court to revise the action below seems much clearer. The question raised under such circumstances is one of law." Chamberlayne on Modern Law of Evidence, § 2117.

The Houston Post and Houston Chronicle of June 15, 1909, were admitted in evidence, over appellant's objections, for the purpose of proving the market value of the plaintiff's steers in Houston upon that date. The statement in the Post was as follows: "The A. C. Bell Live Stock Commission Company quotes the Houston market as follows: Steers, good to choice $3.75 to 4.00 per cwt., common to fair 3.00 to 3.50." The quotations in the Chronicle were exactly the same as those in the Post, except that they did not refer to the A. C. Bell Commission Company. A. C. Bell testified that he furnished the quotations to the Post, but did not know who furnished those to the Chronicle. He and other witnesses testified that the quotations in the Houston newspapers related to the coast country steers, and not fat West Texas steers such as plaintiff contracted to sell. It was also proved that there was no cattleman's exchange in Houston, or any other organization which issues official quotations of the market; that Ft. Worth quotations were generally taken as a basis by which to buy cattle; that the quotations in said newspapers frequently were not changed for several days, although the market changed in the meantime. Plaintiff and some of his witnesses testified that the quotations in said newspapers were relied upon by persons dealing in cattle, and that they themselves relied upon them. These statements did not appear to have been based upon any actual deals with reference to such quotations made by themselves or others, and the writer doubts whether they should be held sufficient to accredit the newspapers, and also the wisdom of holding newspapers accredited unless proof be made as to their methods of procuring information. Wharton on Ev. vol. 1, § 674 (3d Ed.); Elliott on Ev. § 1302; Chamberlayne on Mod. Law of Ev. § 2099c. In view, however, of the holding of this court upon the former appeal of this case and of the case of Railway v. Isenhower, 131 S. W. 298, we hold that an issue of fact was made as to whether the quotations were credible which justified the trial court (in the exercise of the discretion vested in him) in holding the market reports in said newspapers sufficiently accredited. Even though the quotations related to a different class of cattle, there being testimony to the effect that coast country cattle were equally as good and valuable as those contracted to be sold by plaintiff, we think the quotations could not be rejected as evidence because referring to coast country cattle. Railway v. Gunter, 39 Tex. Civ. App. 129, 86 S. W. 939. It appears, however, that when it was shown that the quotations in the Post represented only the opinion of A. C. Bell, such quotations should have been rejected as being merely individual hearsay. Chamberlayne's Mod. Law of Ev. § 2099d; Bank v. City of New Bedford, 175 Mass. 257, 56 N. E. 290. We, therefore, sustain assignment No. 8 relating to the admission of the Post, but overrule No. 9 relating to admission of the Chronicle.

The tenth assignment is overruled for the reasons stated in discussing the seventh assignment.

As the case will be reversed, we will not discuss the eleventh and twelfth assignments, which relate to the sufficiency of the evidence.

[8] By assignments 13 and 14 appellant attacks the admissibility of the testimony of plaintiff as to the market value, at Houston, on June 15, 1909, of cattle such as are described in the contract sued upon. Appellant contends that plaintiff upon cross-examination admitted that he based his opinion solely upon the quotation in the Post and Chronicle of a different class of cattle from those he was testifying about, but upon examining his entire testimony we conclude that the court was authorized to hold that he could express an opinion as to the market value of cattle in Houston such as he owned. While he made no comparison of his cattle with the class quoted, he testified to knowledge of the Ft. Worth market, and made a comparison of values in the two markets. The same may be said of John Griffith's testimony. Chamberlayne, Mod. Law of Ev. § 2099g. Assignments 13, 14, 16, and 17 are overruled.

[9] The testimony of plaintiff, John Griffith, and Freeman that they relied upon the quotations in the Post and Chronicle was merely for the purpose of accrediting said

newspapers, and was admissible upon the issue of the credit to be given said newspapers, under the former decision of this case and the case of Railway v. Isenhower, 131 S. W. 298. Assignments 15, 18, and 20 are overruled.

[10, 11] The nineteenth assignment complains of the admission of plaintiff's testimony to the effect that he had written certain letters to two commission firms at Ft. Worth a few days after June 15th, and received replies that his cattle would bring about $3.50 on the Ft. Worth market. The loss of letters should be shown before a witness can be permitted to testify to their contents. The letters would not have been admissible if produced. Pecos Ry. v. Hughes, 44 Tex. Civ. App. 135, 98 S. W. 410; Western Union Company v. Bradford, 41 Tex. Civ. App. 281, 91 S. W. 818; Railway v. Williams, 43 Tex. Civ. App. 549, 96 S. W. 1088; Brockman Com. Co. v. Aaron, 145 Mo. App. 307, 130 S. W. 116; Chamberlayne, Mod. Law of Ev. § 2099d. The assignment is sustained.

[12] The witness Freeman had no knowledge of the Houston market except what he got from the Post and Chronicle. He had never sold or bought any cattle at Houston, and did not testify to knowledge of any sales being made there by any one else. Yet, having testified to many years' experience in the cattle business, and thorough familiarity with the class of steers which appellant's witnesses testified were the ones quoted in the Chronicle, and also with the class of steers owned by plaintiff, we think he showed himself qualified to express an opinion as to the comparative value of the two classes of steers in the market at Houston or any other place, but did not show himself qualified to testify to what the market at Houston in fact was on June 15, 1909, as to either class of steers. Railway v. Gunter, 39 Tex. Civ. App. 129, 86 S. W. 939; Chamberlayne on Mod. Law of Ev. §§ 2101a, 2102. The twenty-first and twenty-second assignments are overruled.

The judgment is reversed, and the cause remanded.