## J. C. PENNY CO., Inc., v. GRIST. (No. 1691.)

Court of Civil Appeals of Texas. Beaumont. Feb. 8, 1929.

Rehearing Denied Feb. 20, 1929.

Smith, Crawford & Combs and Leon Sonfield, all of Beaumont, for appellant.

A. Ludlow Calhoun, of Beaumont, for appellee.

HIGHTOWER, C. J. This suit was brought by the appellee, J. K. Grist, against appellant, J. C. Penny Company, Inc., in one of the district courts of Jefferson county, to recover a brokerage commission for the sum of $2,292, with interest thereon at the rate of 6 per cent. per annum from June 22, 1925, which appellee alleged was due him by appellant for services rendered by appellee as a broker in securing and procuring for appellant a lease on a certain store building in the city of Beaumont, Jefferson county, Tex., from one L. Perl, the owner of the store building. It was alleged, in substance, by appellee that the services performed by him in securing the lease for appellant were performed at appellant's request, and with the implied understanding and agreement between him and appellant that he would be paid by appellant a reasonable brokerage commission for his services, and that a reasonable brokerage commission was 2 per cent. of the total amount of the consideration that appellant was to pay for the lease; that, due to his efforts and services, appellant was enabled to secure a lease on the property of Perl for a period of fifteen years from the 22d day of June, 1925, for the total consideration of $114,600, and that a lease contract was, in fact, consummated between appellant and Perl on the store buliding owned by Perl for the total consideration of $114,600; that, though often requested, appellant had failed and refused to pay appellee the brokerage commission due him, or any part of same, and his prayer was for judgment against appellant for an amount of money equal to 2 per cent. of $114,600, with interest thereon at the rate of 6 per cent. per annum from the date of the lease contract between appellant and Perl.

Appellant answered by general demurrer and general denial and by verified plea that appellee was not its agent and was not authorized to represent it in securing or procuring a lease on the Perl property, and that, in fact, appellee did not represent appellant in that transaction, but, if he represented anybody in the transaction, he represented the owner of the property, L. Perl, as his agent, and that appellant owed him nothing for his services in that connection, and had not promised or agreed, expressly or otherwise, to pay him anything for his services. Appellant further specially answered in bar of appellee's suit to the effect that, if it should be found that appellee represented appellant as its agent in procuring or securing from L. Perl a lease on the Perl property, appellee was, nevertheless, barred from a recovery against appellant for the reason that he also was the agent of L. Perl in the transaction, and that he was to be paid by L. Perl for his services in negotiating the lease, and was, in fact, paid by Perl a consideration of $500 for his services to Perl in the transaction, all of which was without the knowledge or consent of appellant, and that therefore appellee was estopped to claim a commission for his services against appellant, and was barred from any recovery by reason of the fact of his dual agency in the transaction. Since there is no question of pleading, as such, presented on this appeal, this brief statement of the pleadings will suffice for a disposition of the questions before us.

The trial was before the court without a jury, and, upon conclusion of the evidence, the trial judge rendered judgment in favor of appellee against appellant for $2,620.88, which was the amount sued for by appellee, including principal and interest up to the date of the judgment, together with interest on the amount of the judgment from the date of its rendition at the rate of 6 per cent. per annum. From this judgment appellant has duly prosecuted this appeal.

Appellant presents for reversal several questions, but the two main ones are, first, that the evidence was wholly insufficient to show that appellee was the agent of appellant or represented appellant in procuring for it the lease on the Perl property, but that, on the contrary, the evidence disclosed that appellee was the agent of and represented L. Perl in the transaction in the negotiations which culminated in the lease contract between appellant and Perl; and, second, that, if the evidence was sufficient to show that appellee was the agent of and represented appellant in the negotiations which culminated in the lease between Perl and appellant, it also showed, without dispute, that appellee, without the knowledge or consent of appellant, also represented and was the agent of Perl in the negotiations for the lease, and that he was to be compensated, and was in fact compensated, by Perl for his services as Perl's agent in the transaction, all of which was without the knowledge or consent of appellant, and that therefore appellee was estopped to claim, and was barred from, any recovery against appellant, as sought by him.

The facts in this record disclose that appellant is a corporation which has its domicile in the city of New York, and operates a chain of stores in many cities and towns throughout the United States; that, in the early part of the year 1924, appellee, thinking that appellant might be induced to open one of its chain stores in the city of Beaumont, got in com-

munication with appellant by letter touching the matter, and invited appellant to consider the matter of opening a store in the city of Beaumont. At that time appellee had in charge for rent a certain store building in the city of Beaumont owned by one J. J. Nathan, known as the Nathan building, and appellee had in mind to rent or lease this building to appellant for store purposes. Appellee, by letter, requested appellant to send one of its representatives to Beaumont to look at the Nathan building, with a view to leasing it, and appellant, in response to this request, sent one of its agents to Beaumont, who inspected the Nathan building, but, upon this agent's report, appellant declined to take a lease on the Nathan building, stating, in substance, to appellee that the Nathan building was not suitable for appellant's purposes, but further stating, in substance, to appellee, by letter, that it might become interested in Beaumont later on, and, if a suitable store building could be secured for it for the year 1925, it would be glad to take the matter up further with appellee with a view to locating one of its stores in Beaumont. The evidence in the record shows that the matter rocked along after this, and appellee was more or less active in looking out for, and trying to secure for appellant, a store building in the city of Beaumont suitable for its purposes, according to information as to the kind of building required by appellant which had already been given appellee. The evidence further shows, in substance, that along about the 1st of May, 1925, appellee, who was still on the lookout for a location for appellant in Beaumont, learned that Mr. L. Perl, a business man in the city of Beaumont, had recently purchased certain property on the corner of Pearl and Bowie streets in the city of Beaumont, known as the Blanchette building, and appellee was of the opinion that this property, with certain changes and improvements, would be suitable for appellant's purposes as a store building, and he interviewed Perl, and learned from him that Perl was anxious to secure a tenant for this property, and desired to do so as soon as he could. Thereupon Mr. Perl, the owner of the Blanchette Building, and appellee entered into the following written contract, or rather, Mr. Perl gave to appellee the following written contract:

"Beaumont Racket Store.

"Beaumont, Texas.

"J. K. Grist, Beaumont, Texas—Dear Sir: Confirming our conversation relative to your securing for me a tenant for my store room fronting approximately forty ft. on Pearl Street X 70 ft. deep at the corner of Pearl and Bowie.

"I agree to renovate the property putting same in first class order such as a suitable front to suit the tenant for his particular line of business, cost not to exceed ($10,000) Ten Thousand Dollars.

"I further agree to give the corporation a ten year lease, first five years at $500.00 per month, the second five years $600.00. Rent to be due and payable in advance on the first day of each month, with an additional ten days privilege if found necessary.

"For your services in securing such tenant on the above terms I agree to pay you when the lease is executed Five Hundred dollars.

"You shall use due diligence in securing this tenant not later than June first, 1925.

"If by June the first negotiations are under way I further agree to give you additional reasonable time to consummate the deal.

"Deal must be closed by July 5th, 1925.

"[Signed] L. Perl."

This letter from Mr. Perl to appellee bore no date, but it is conceded that it was prior to May 11, 1925. On May 11, 1925, appellee, Mr. Grist, wrote to appellant the following letter:

"Grist Bond and Mortgage Company.

"Beaumont, Texas. May 11th—25.

"Mess. J. C. Penny & Company Real Estate Department, New York, N. Y. Attention Mr. Geo. C. White—Dear Mr. White: Referring to your letter in my files under date of July 10th—24. In which you advise me that should anything come to my attention, which would line up for 1925 store opening you would be glad to consider same.

"I wish to advise you along these lines, that I have an option signed by L. Pearl who since the first of this year has purchased the V. Blanchette Building at the corner of Pearl and Bowie Streets.

"The corner is for rent dimensions are 40–70 ft or 2,800 square feet for this space he has agreed to lease to my client this space giving a ten year lease, the consideration being Five Hundred dollars for the first five years, and the last five years to be six hundred dollars per month, rent payable in advance on first day of each month, and not to be paid later than the tenth of each month, if you so desire.

"He has agreed in writing with me to put the building in first class order, such as a new front to suit the tenant for his particular line of business, cost not to exceed Ten Thousand Dollars.

"Mr. Perl recently purchased this property paying One Hundred Thousand Dollars cash for same.

"It is located directly on the corner opposite the First National Bank across Bowie on Pearl St. is located the American National Bank directly across Pearl St. at Bowie is located the City National Bank making a financial center with three banks on the three corners.

"He has additional warehouse space that is available and for which will be an additional consideration.

"For your information I will advise that the First National Bank is paying to the Gil-

bert Estate Eight Hundred Dollars for floor space of approximately thirty-three hundred feet, they spent their own capital of fifty thousand dollars in fixtures and putting the building in order.

"Your Mr. Barr having visited Beaumont last year and having spent several days here studying the locations, I am sure he will be thoroughly familiar with the property after referring to his maps.

"The building in question is of three stories brick and when a tenant is secured he will immediately put the corner in order. Being a former merchant, I feel that you will be securing an ideal location in the very heart of the business district and where the combined advertising strength will draw the people to this store.

"It is admitted by all thinking merchants that the day of the chain store is at hand, and while business conditions are at present throughout the land quiet, I believe this is the ideal time to secure an advantageous lease and if you are interested I will appreciate having you wire me upon receipt of this letter if you are interested in opening negotiations.

"I have some other parties under consideration and as I have but a limited time to secure for Mr. Perl this tenant and while I have no desire to attempt to rush you yet it behooves me to expedite matters. I might further say to you after drilling for twenty-five years at High Island, Texas, on the Gulf, Colorado and Santa Fé Ry. Company's line fifty miles from Beaumont about half way between Galveston and Beaumont, Texas, a twelve hundred barrel well (oil) was discovered yesterday.

"A franchise has been granted R. C. Duff of Houston Texas for the building into Beaumont and Port Arthur, Texas, a railway line known as Beaumont, Waco and Trinity Railway Company. This line will shortly be under construction giving the city another trunk line.

"Trusting that you will give this matter your immediate attention and if the deal is consummated there will be a reasonable brokerage charge for my services in the matter. Yours very truly, J. K. Grist, 1197 Broadway."

Appellant, after receiving the letter from appellee dated May 11, 1925, and just above quoted, sent one of its representatives, Mr. Ingle Barr, to Beaumont, who, without consulting appellee, immediately took up negotiations directly with Mr. Perl, and concluded with Mr. Perl a lease contract on the Perl property for a period of 15 years, and the total consideration that was to be paid by appellant to Mr. Perl for the property during the 15-year lease was $114,600. This contract between appellant and Perl was dated June 22, 1925.

The trial court, at appellant's request, prepared and filed findings of fact and conclusions of law as follows:

"Findings of Fact.

"(1) I find that in 1924 plaintiff had in charge for rental a store room in the City of Beaumont, Jefferson County, Texas, known as the Nathan Building and owned by the Goodhue Estate of Beaumont, Jefferson County, Texas.

"(2) I further find that in April or May of said year 1924, plaintiff had defendant send its representative to Beaumont to look at said store building for the purpose of locating one of its chain stores in the City of Beaumont, Jefferson County, Texas.

"(3) I further find that the defendant was not interested in the rental of said store building and so advised plaintiff in June 1924.

"(4) I further find that on July 10th, 1924, defendant informed plaintiff by letter as to the kind of store room it desired and requested of plaintiff that if anything should come to his attention that would be available for their opening a store in Beaumont in 1925 they would like to be advised thereof.

"(5) I further find that plaintiff exerted his efforts and time in trying to find a suitable store location for defendant in Beaumont, Jefferson County, Texas, and did in May 1925 locate a store room, which plaintiff thought would be desirable for defendant, to-wit: store room in building at corner of Pearl and Bowie Streets, Beaumont, Jefferson County, Texas, which was commonly known as the Blanchette Estate Building, and which building had recently been purchased by L. Perl of Beaumont, Jefferson County, Texas.

"(6) I further find that plaintiff having in view the location of a store room for defendant secured from L. Perl, the owner of said building at the corner of Pearl and Bowie Streets, a contract to secure a tenant for the corner store room which had a frontage of approximately 40 feet on Pearl Street with a depth of 70 feet, and further secured from Mr. Perl a concession to place said store room in first class condition, such as would be suitable to tenant for his particular line of business, the total cost not to exceed Ten Thousand Dollars ($10,000.00), and also privilege of ten year lease on said store room, and also agreed to pay plaintiff $500.00 for securing a tenant for him, which he paid plaintiff when defendant took lease.

"(7) I further find that immediately upon plaintiff securing said contract from the said L. Perl, he advised L. Perl that the tenant for said store room he had in view was the defendant, J. C. Penny Company, Inc., with its head office in New York.

"(8) I further find that plaintiff immediately after securing said contract from L. Perl wrote defendant, stating that in pursuance of their letter of July 10th, 1924, he had secured an option from L. Perl for the corner store room in his building, with approximately 2,-

800 sq. ft., together with a ten year lease, Five Hundred ($500.00) Dollars per month for the first five years, and Six Hundred ($600.00) Dollars per month for the next five years, and advised defendant further what he had secured in a way of concession from Mr. Perl; and further advised defendant that if deal was consummated there would be a reasonable brokerage charge for his services.

"(9) I further find that defendant advised plaintiff that just as soon as it could secure an available manager for a store in Beaumont it would advise plaintiff whether it would be interested in securing said lease and to keep them advised as to whether place would be available at a later date.

"(10) I further find that plaintiff wired defendant on May 24th, 1925, that said location was still available.

"(11) I further find that defendant wrote plaintiff May 29th, 1925, that they had not been able to secure a manager for the Beaumont store, and would advise plaintiff by June 15th, 1925, whether they would be interested in Beaumont that year.

"(12) I further find that defendant sent its representative to Beaumont to look over the L. Perl store space, and never notified plaintiff of its acts and further said representative told plaintiff that defendant had several locations under consideration, but had not decided on any. I find that at that time Deft had already reached an agreement for the Perl store.

"(13) I further find that upon report of its representative, defendant did on June 22nd, 1925, execute with L. Perl a lease contract on the corner store room of building owned by the said L. Perl at the corner of Pearl and Bowie Streets in the City of Beaumont, Jefferson County, Texas, and warehouse facilities in adjoining building, said lease to begin August 1st, A. D. 1925, and extend for a period of fifteen (15) years. The rental to be Six Hundred ($600.00) Dollars per month for the first seven years of lease, Six Hundred Fifty ($650.00) Dollars per month for the next five years of lease, and Seven Hundred ($700.-00) Dollars per month for the last three years of lease, or a total rental for the fifteen (15) years of One Hundred Fourteen Thousand Six Hundred ($114,600.00) Dollars.

"(14) I further find that the usual and customary fee paid for services rendered by plaintiff to defendant in Beaumont at the time lease contract was made and entered into between defendant and L. Perl was two (2%) per cent of the total rental to be paid under such lease contracts.

"(15) I further find that plaintiff was a middle man or broker in the transaction between defendant and L. Perl and not the agent of either party, having no power or discretion in the transaction, but was the common agent of both.

"(16) I further find that plaintiff has made repeated demands on defendant for his brokerage fee for services rendered in securing location for defendant, but defendant has failed and refused to pay same or any part thereof.

"Conclusions of Law.

"(1) I conclude as a matter of law that plaintiff was a broker or middle man in the transaction between defendant and L. Perl and not the agent of either party, but the common agent of both.

"(2) That plaintiff was entitled to a fee from defendant of two (2%) per cent of the amount to be paid under said lease contract between defendant and L. Perl of One Hundred Fourteen Thousand Six Hundred ($114,-600.00) Dollars, together with interest at 6% from June 22nd, A. D. 1925, on which the said lease contract between defendant and L. Perl was executed, or a total of Two Thousand Six Hundred Twenty and 68/100 ($2,620.68) Dollars being due as of November 14th, A. D. 1927, date of judgment in this cause, and in addition is entitled to all costs of suit, and which judgment shall bear interest from its date until paid at the rate of 6% per annum."

The findings of fact as made by the trial court are fully sustained by evidence adduced upon the trial, and are not questioned by counsel for appellant, with the exception of the fifteenth finding of fact, which was as follows:

"I further find that plaintiff was a middle man or broker in the transaction between defendant and L. Perl and not the agent of either party, having no power or discretion in the transaction, but was the common agent of both."

This finding of fact (if it be a finding of fact) is challenged by appellant as being wholly without support in the evidence, but, on the contrary, that it is in the face of the undisputed evidence in the case. Since, as we have stated, all findings of fact made by the trial court, as above shown, are unchallenged by appellant, with the exception noted, and are sustained by the undisputed evidence, we adopt them as our own findings, with the exception of finding of fact No. 15, and will proceed to dispose of the appeal accordingly.

Appellant's first proposition is as follows:

"A broker cannot act as the agent of both lessor and lessee in the same transaction and receive a commission from either unless he so acts with the full knowledge and consent of both principals; and the evidence disclosing beyond controversy that plaintiff represented the lessor, L. Perl, who paid him a commission for his services in consummating the lease with defendant, and that the principals did not consent to a dual agency, or know that he expected compensation from both, he cannot, as a matter of law, recover compensation from the defendant."

The second proposition advanced by appellant is:

"A broker is a mere middleman when he is employed by one party simply to bring to him, or put him in touch with, a certain other party with whom he desires to deal, the agent having no other duty to perform than to bring the two parties together, but when, as shown by the undisputed evidence in this case, the plaintiff was employed by L. Perl to secure for said Perl a tenant, and having the exclusive agency under his contract for a period of time to secure any tenant who might be ready, willing and able to lease the property on the terms stipulated, the plaintiff being clothed with discretion in the transaction, promised a commission of Five Hundred Dollars for his services, and obligated to use diligence in securing the tenant, he was not a mere middleman in the transaction, but was the agent of Perl, and he is not entitled to recover a commission from defendant who leased the property from Perl, in the absence of a showing that both parties, with full knowledge of the facts consented to the dual agency and that plaintiff might receive commissions from both, especially when the evidence further shows that he participated actively in the negotiations."

It is conceded by the learned counsel for appellee in this case that appellant's first proposition, as just quoted, is a correct and accurate statement of the law as an abstract proposition, but counsel for appellee contends that this proposition is not sustained by the facts in this case.

The rule of law as invoked by appellant's first proposition is stated by 4 R. C. L. at page 328, as follows:

"Inasmuch as a broker is in duty bound to refrain from secretly undertaking to represent interests adverse to those of his employer, it is unlawful for him to attempt to act in the capacity of broker for both sides to a negotiation without the knowledge and consent of each of them, and in the event of his doing so he is not entitled to be compensated by either. To permit a broker to recover double commissions where either party to the negotiations has not assented to his dual agency, is deemed to be contrary to public policy, notwithstanding the fact that the broker's conduct may have been characterized by the utmost good faith. The rule is intended to be not only remedial of actual wrong, but preventive of the possibility of it, and should be rigidly enforced, unless it appears that the persons for whose protection it is intended expressly agreed, with a knowledge of all the circumstances, to waive their rights under it."

The same authority at page 330 states the exception to the general rule just quoted, as follows:

"The authorities are practically unanimous in holding that there is one notable exception to the rule set forth in the preceding paragraph, and that is to the effect that a broker employed as a middleman, not to negotiate a sale or purchase, but simply to bring two parties together and permit them to make their own bargain, may recover an agreed compensation from both, though neither knows that compensation is expected from the other. A broker is simply a middleman within the meaning of this exception when he has no duty to perform but to bring the parties together, leaving them to negotiate and come to an agreement themselves without any aid from him."

Now, as we have already stated, one contention made by appellant before us is that the evidence was insufficient to show that appellee was the agent of or represented appellant at all in the matter of securing the lease from L. Perl, but, without discussing this contention or the evidence in that connection, we shall simply dispose of it by saying that in our opinion the evidence was abundantly sufficient to show that appellee did act as the agent of appellant, or in behalf of appellant in securing the lease for it on the Perl property, and that appellee, in furnishing his services to appellant in that connection, expected to charge appellant a reasonable commission for his services in that connection, and that appellant was so advised by appellee, and that the contract for the lease was finally closed by appellant with Perl with full knowledge on appellant's part of the services that appellee had performed in that connection, and with full knowledge that appellee expected from appellant a reasonable commission for his services in its behalf in connection with the negotiations for the Perl property. Therefore we, at this point, overrule appellant's contention that the evidence was insufficient to show that appellee was its agent, and that it was not liable to appellee for services performed by him in its behalf as its agent.

We have reached the further conclusion, however, that appellee cannot recover in this case anything against appellant, for the reason, as contended by its first proposition above shown, that he acted in the dual capacity of agent for both appellant and Perl in negotiating the lease contract for the Perl property, and that he was to receive, and did receive, compensation for his services as Perl's agent in the matter, all of which was without the knowledge or consent of appellant, and that, as contended by appellant's second proposition, appellee was not a mere middleman in the transaction.

As we have stated above, the undisputed evidence shows that Mr. Grist was paid by Mr. Perl $500 for his services in securing appellant as a tenant for the Perl property. The undisputed evidence further shows that appellant had no knowledge that appellee was to receive from Perl any compensation for his services in negotiating this lease, and that appellant never at any time, prior to the consummation of the contract with Perl, learned

of appellee's relation to Perl in the matter, and never at any time consented that appellee should represent Perl in the transaction or receive any compensation from him for his services. The testimony further shows, without dispute as we see it, that Mr. Perl never knew until after the written contract between him and appellee, as above shown, was entered into, that appellee was representing appellant in negotiating for the lease on the Perl property. It is true that the record shows that Mr. Perl, after the written contract between him and appellee was executed, told appellee, in substance, that he (Perl) thought that appellee was representing appellant in his efforts to obtain the lease.

 It is also true that Mr. Perl, who was a witness in the case in the trial below, testified, in substance, over appellant's objection, that appellee was not his agent to secure a tenant for the Perl property, and appellee himself testified that he was not Mr. Perl's agent. And counsel for appellee contends earnestly in this court that this testimony of Mr. Perl and appellee is conclusive upon this court on the point that appellee was not the agent of Mr. Perl in his negotiations for the lease of this property to appellant. Counsel makes this contention because, as he says—and we agree with him to that extent—that the bill of exceptions preserved by counsel for appellant in this connection is not in such shape as to disclose error on the part of the court in admitting this testimony. However, if the written instrument between Perl and appellee, above copied, on its face shows that appellee was the agent of Mr. Perl to secure for him a tenant for the Perl property, then the testimony of Mr. Perl and that of appellee himself, to the effect that appellee was not such agent of Mr. Perl, was inadmissible, because contradictory of the written contract itself, and therefore such evidence cannot be considered by this court as any evidence at all, whether objected to by appellant or not, and this court must wholly disregard it in reaching its conclusion on the point as to whether appellee was the agent of Mr. Perl, as contended by appellant, and not a mere middleman in the transaction, as contended by appellee. Henry et al. v. Phillips, 105 Tex. 459, 151 S. W. 533; Childress v. First State Bank (Tex. Civ. App.) 264 S. W. 352; Johnson v. Gattegno (Tex. Civ. App.) 267 S. W. 740; Conyer v. Burckhalter (Tex. Civ. App.) 275 S. W. 606; Kempner v. Huntsville State Bank (Tex. Civ. App.) 282 S. W. 325. As we interpret and construe the written instrument between L. Perl and appellee, which we have quoted above, there is no escape from the conclusion that appellee was, by the very terms of that instrument, made the agent of Mr. Perl to secure for him a tenant for the store building at the corner of Pearl and Bowie streets, which was afterwards leased by Perl to appellant, as we have above shown. Indeed, our construction of the instrument is that Mr. Perl, by clear implication, thereby made appellee his exclusive agent in seeking a tenant for his store building for the period of time stated in the instrument. The instrument states, in effect, that appellee should have until June 1st after the date of the instrument in which to find a tenant for Mr. Perl upon the terms stated in the instrument, but that, if a tenant was not secured by June 1st and the negotiations consummated, still if negotiations were pending between appellee and some tenant by June 1, 1925, then appellee, by the terms of the instrument, was given additional time, until July 5th following, in which to close and consummate pending negotiations for the Perl property. By the terms of the instrument, appellee agreed with Mr. Perl that he would diligently try to secure for Mr. Perl a tenant for the property on the terms named in the instrument by Mr. Perl, and the instrument expressly states that appellee should be paid by Mr. Perl $500 for his services to Mr. Perl in that connection when a lease of the Perl property was consummated. Now, does not this written instrument from Perl to appellee constitute clear written authority to appellee to diligently seek for and find a tenant (any tenant for the Perl property who was willing, ready and able to lease the property upon the terms stipulated by Mr. Perl)? We hold that it does, and think there can be no reasonable escape from this conclusion. Counsel for appellee earnestly contends that this instrument between Perl and appellee was but a mere option given by Perl to appellee on the property for the time therein stated, and that it gave to appellee no discretion in the matter of securing a tenant for Mr. Perl, and gave him no authority to bind Mr. Perl to lease the property to any one, and that therefore appellee, under the terms of this instrument, was a mere middleman, and under the law could receive compensation from both appellant and Perl for his services, which resulted in bringing appellant and Perl together and the consummation by them of the lease contract. It is unnecessary, we think, and would serve no useful purpose to discuss what discretion, if any, appellee had in seeking and procuring a tenant for Mr. Perl's property under the terms of this written instrument. It will suffice to say, we think, that under the terms of this instrument, if appellee had procured a tenant who was ready, willing, and able to lease the Perl property upon the terms stipulated in this instrument and had offered to do so, and Mr. Perl had declined to accept such tenant, he would have found great difficulty in attempting to justify his refusal to make the lease to the tenant procured by appellee upon the terms authorized in the written instrument. Such refusal, had there been one on his part, would have been

a great breach by Mr. Perl of the contract that he had authorized appellee to make with a tenant for the property, and, in our opinion, he would have been responsible for such damages, if any, as might have accrued for his failure to carry out the contract which he had authorized appellee to make. Therefore, it cannot be said, as contended· by learned counsel for appellee, that the terms of the instrument between Perl and appellee gave the latter no authority to bind Mr. Perl in a lease of the property to a competent tenant. This being true, it follows that we are of the opinion that appellee was not a mere middleman in the transaction, · having no discretion or authority in the matter of procuring a tenant for Mr. Perl, but, on the contrary, upon the undisputed facts, he was the agent of both appellant and Mr. Perl in the matter of securing the tenant for the Perl property, expecting from appellant a consideration for his services, and expressly contracting with Perl for a consideration for his services to him. As we have stated, his relation to Mr. Perl was undisclosed and unknown to appellant during the negotiations, and therefore, under the authorities, without exception so far as we have been able to find, appellee is estopped, as pleaded by appellant, to recover against it anything in this case.

Counsel for appellee, in his brief, among other authorities on this point, has cited the case of T. A. Hill & Son v. Patton & Schwartz (Tex. Civ. App.) 160 S. W. 1155. It is his contention that this case is on "all-fours" with the case at bar in its facts. We cannot agree with counsel in this contention, because, as we read the cited case, it is parallel with the facts in the present case in hardly any respect. In Hill & Son v. Patton & Schwartz, the plaintiff, Patton & Schwartz, sued Hill & Son to recover a commission which they alleged they had earned as the agent of Hill & Son in a transaction involving an exchange of real estate between one Dr. H. S. Dew and Hill & Son. The facts of the case, briefly stated, are that Patton & Schwartz had in their charge for sale a certain rural tract of land of 490 acres owned by Dr. Dew. They were authorized by Dew to find a purchaser of his rural property for a cash consideration. Dr. Dew valued his property at from $40 to $50 per acre. ·It was expressly stipulated and agreed between Dr. Dew and Patton & Schwartz that their authority extended only to finding a purchaser for the property, and that they were not permitted to close any deal for the property, but were expressly limited to finding a purchaser and bringing him to Dr. Dew, who reserved the right to consummate a sale of his property on such terms as he might deem best. In some way Hill & Son learned that Patton & Schwartz had the Dew property for sale, and T. A. Hill, of Hill & Son, went to Mr. Schwartz, of Patton & Schwartz, and stated

to him that he (Hill) understood that Schwartz had the Dew property for sale, and that Hill was interested in the Dew property, and that he would like to exchange for the Dew property certain town property owned by Hill & Son. Schwartz informed him at that time that he was not authorized to close any deal with any one involving the Dew property, and thereupon Hill told Schwartz that, if he could induce Dr. Dew to exchange his 490-acre tract of land in the country for the Hill town property, he (Hill) would pay the firm of Patton & Schwartz $1,000 for their services as agent for Hill & Son in the transaction. Schwartz accepted Hill's offer, and told him that he would endeavor to bring about an exchange of the properties, and at once wrote to Dr. Dew and told him, in substance, that Hill & Son were interested in the Dew property, and it was at Schwartz's suggestion that Dr. Dew and Hill met and commenced negotiations for the exchange of their properties. Dr. Dew was willing to make the exchange of his property for the town property owned by Hill & Son and a cash consideration of $8,000. At first Hill declined to accept Dew's proposition, and negotiations pended some little time between them afterwards about the matter, but finally Dr. Dew closed a deal with Hill & Son by which he accepted in exchange for his rural property Hill's town property and got $8,000 cash in addition. At the time this transaction was closed, and long before it was closed, Hill & Son knew that Patton & Schwartz had ceased to act as agent for Dr. Dew, and that they had no authority whatever to represent Dr. Dew. Indeed, the facts were in that case that Hill & Son knew that Patton & Schwartz were acting as their exclusive agents in the matter, and not as the agents of Dr. Dew, and they knew, also, that Patton & Schwartz were expecting compensation for their services in the matter from Hill & Son only, as had been agreed between them. It was upon such state· of facts in that case that a recovery was allowed and upheld by the Court of Civil Appeals at San Antonio in favor of Patton & Schwartz against Hill & Son. The court, in that case, recognized and clearly stated both the general rule and the exception to it in cases of this sort as follows:

"A broker can not act as agent for both the buyer and seller, and, if he does so, can not claim commissions from either unless they both had knowledge of his dual agency, but this rule only applies where the agent has some discretion in fixing the terms, or has power to bind the principal to sell the property, and if the broker is a mere middleman employed to bring the parties together when they make their own bargain, he may recover commissions from both."

Further on in the opinion in that case the court said:

"There is no dispute here that the employ-

ment of appellees by Dr. Dew was simply to receive and submit to him cash offers for his property. They were not vested with any discretion of any nature, and their only duty was to advise the land owner of possible opportunities to sell."

Further on the court said:

"Appellees were not employed to effect a sale or trade of the property, but to bring the parties together for the purpose of personal negotiations."

As stated before we fail to see any relevancy between the facts in the T. A. Hill & Son v. Patton & Schwartz Case and the facts in this case touching the question of dual agency.

It is with reluctance that we have had to conclude that the appellee is not entitled to hold the judgment that he recovered below in this case, for the undisputed facts show, we think, that his every effort in behalf of appellant to secure for it a location in Beaumont was put forth in the utmost good faith, and that he was vigilant and active in its behalf; and the undisputed evidence shows, and in fact it was agreed by the parties below, that the amount of the judgment was reasonable and proper if, upon the facts and under the law, appellee was entitled to recover any amount. We are bound, however, by the rules of law as we understand them, applicable to the undisputed facts disclosed by this record.

For the reasons stated, the trial court's judgment is reversed and here rendered in favor of appellant.