## MRS. FANNIE RAMSEAUR v. S. E. BALL ET AL.

### Decided February 17, 1910.

**1.—Boundaries—Controlling Calls.**

The principles giving controlling effect to certain calls in ambiguous description of land discussed.

**2.—Same—Beginning Point—Case Stated.**

The beginning corner is of no greater dignity than others in the description of land. Where a deed called for marked bearing trees at the beginning corner on the East line of the original survey, and for the Southeast corner, and for a given distance between, the beginning corner should be placed at the distance North from the Southeast corner so called for, unless a point further North on the East line could be identified by the bearing trees or other evidence, as the place marked and designated for beginning.

**3.—Newly Discovered Evidence.**

Facts considered and held not to show error in refusal of a motion for new trial on the ground of newly discovered evidence in regard to a disputed boundary line, the facts being ascertainable and the necessity for inquiry into them obvious before trial.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Smelser & Vaughan,* for appellant.

*J. B. Manning, N. L. Dalby* and *F. M. Ball,* for appellee.

. HODGES, Associate Justice.—This suit was instituted by the appellant in the form of an action of trespass to try title, to recover 430 acres of land located in the southern portion of the Charles Lewis survey in Bowie County. The original survey was patented to Charles Lewis in 1845, and is much larger than the tract in controversy. In 1853 Charles Lewis executed a deed to F. Smith, under whom the appellees claim, containing the following description: "Beginning at a stake on the east boundary line of my said survey, near Myrtle Springs, witness trees 2 post-oaks, marked E. L. Thence South 2090 vrs. to the S. E. corner of my said original survey, witness trees marked L. P. and C. L. Thence East (west) 1650 vrs. to my S. W. corner, witness trees marked C. L. Thence North 2090 vrs. to a stake, witness trees marked E. L. Thence East to the beginning." The principal question in issue is, whether the land in controversy is contained within the description of that instrument.

At his death Charles Lewis left a will, in which he provided for the payment of a legacy of $5,000 to Margaret Ann Stewart. Upon a failure of his executors to pay this amount Margaret Ann Stewart recovered a judgment against them, and it is claimed that the land in controversy, with other land, was levied upon and sold in 1880 by the sheriff of Bowie County under an execution issued upon that judgment. W. H. Tilson and F. M. Henry became the purchasers at that sale. Subsequently Henry acquired Tilson's interest, and then conveyed to Knox, under whom the appellant now claims. The trial court concluded, and we think his conclusion correct, that the description in the sheriff's deed to Tilson and Henry, was so vague and uncertain as to make it absolutely void as to this land. The evidence, however, shows that P. S. Ramseaur, the deceased husband of the appellant, soon after he acquired the land, went into actual possession by enclosing it with a fence and using it for the purpose of pasturing stock; and appellant relies upon this prior possession in the event it should be held that the sheriff's deed under which she claims is not sufficient in point of description. It is virtually conceded that if the field notes contained in the deed from Lewis to Smith embrace the land in controversy, then this judgment should be affirmed.

Upon the face of the deed there is no ambiguity in the field notes, and none is shown when we undertake to apply them to the land claimed, except as to the length of the east and west lines. From a plat offered in evidence it is shown that the apparently recognized beginning corner referred to is 3477 varas distant from the southeast corner of the survey, instead of 2090 varas as called for in the deed. The testimony fails, however, to show the existence of the bearing trees called for, or any other fact that would permanently locate this northeast corner (the beginning) at the place claimed, except its recognition by the parties in interest. There seems to be no doubt as to the proper location of the southeast and southwest corners of the Lewis survey. At none of the corners are the witness trees called for in the deed shown to be in existence, or to have ever been there within the knowledge of any one who testified in the case. If we lo-

cate the beginning corner where the appellant claims it to be, there
is evidently a mistake in the calls for distance on the east and west
lines and in the quantity of land conveyed. If we push the begin-
ning corner 1387 varas farther south there would be no variance in the
field notes and but an inconsiderable excess in the quantity of land.
Appellant contends that the calls for distance should in this instance
control, for the reason that the southwest corner of the Lemuel Peters
survey is exactly 2090 varas south of the beginning corner of the
Lewis as recognized by the parties, and that the surveyor mistook this
for the southeast corner of the Lewis survey. It is agreed that this
mistake is made evident not only by the discrepancies in the distance
and area, but by the further fact that one of the witness trees called
for at this point is designated as being marked L. P., which, she
claims, must refer to Lemuel Peters. We may assume that there was
a mistake either in the location of the beginning corner, or of the
southeast corner of the Lewis survey, the end of the first call for dis-
tance. But which shall we say should yield to the call for distance?
The beginning corner is of no higher dignity than any other corner
of a survey of land. The only evidence in the record before us that
can be relied upon to fix the location of this beginning corner is found
in two conveyances made by Lewis in 1854, on the same day, one to
F. Smith and the other to J. W. Battle. The deed to Smith begins:
"Beginning at a stake, the N. E. corner of a 640-acre tract in the
name of J. F. Smith, on the E. B. line of the Chas. Lewis river tract
of land," etc. The deed to Battle begins: "Beginning at a stake on
Chas. Lewis' E. line, 161 poles north of the N. E. corner of J. F.
Smith's 640-acre tract." There is nothing in these field notes to in-
dicate that the beginning corner (the N. E. corner) was not just
2090 varas north of the southeast corner of the Lewis survey. There
was nothing to tie it to the place where the parties now contend that
it is. The two post-oaks marked E. L., called for in the field notes
as indicating the beginning corner, were not located by the evidence,
the land at that place having been cleared of the timber. In this
state of the evidence, why should not this tract of land be located
1387 varas farther south, in conformity with the field notes? The
conflict between the field notes in the deed to Smith and the true de-
scription of the land as it is lies in the assumption that the north-
east corner is at the point designated in the plat. It may be true
that, by the general recognition of the parties extending over many
years, that particular spot has been regarded as the beginning corner
from which the tract of land was to be located, but such recognition
might have grown out of a mistake. Even if we concede that Lewis
and Smith regarded that as the northeast corner, it may still have
been the result of a mistake upon their part. Unless we disregard
the plain language of the deed, the land conveyed extended to the south
boundary line of the Lewis survey. There is nothing to indicate the
corners, and the south boundary line of the Lewis was not marked on
the ground. If this be true, then, viewed from the standpoint of
the appellant, we have a conflict between distance and artificial objects.
That, in such cases, calls for distance must yield, is too well settled
in this State to require the citation of authorities. The exceptions to

this rule seem to arise in cases where it is apparent from the face of the grant that the calls for natural and artificial objects were inserted by mistake, or were laid down by conjecture and without regard to rule. In such instances course and distance will prevail as being, under the particular circumstances, the best evidence of the actual intent of the parties. Hubert v. Bartlett, 9 Texas, 104; Booth v. Upshur, 26 Texas, 70; Johnson v. Archibald, 78 Texas, 102, 14 S. W., 266. We fail to find anything in the facts of this case to bring it within the exception.

The refusal of the court to permit the appellant to file an amended motion for a new trial is made the basis of one of the assignments of error. The case was tried before the court without a jury, and shortly after judgment was rendered in favor of the appellees the appellant filed a motion for a new trial. Action on this motion was delayed till near the close of the term, as stated by the court, at the instance of the appellant's counsel. On the day the motion was finally called for disposition, counsel for appellant desired to file an amended motion setting up the fact that they had discovered other material evidence not offered on the trial. The amendment was accompanied by the affidavits of the witnesses whose testimony was desired for use upon another trial. Upon objection made by the attorneys for appellee, the court refused to permit the filing of the amendment and overruled the original motion. The error, if any, in refusing permission to file the amendment, would not justify a reversal of the case, unless upon an inspection of the record it appeared that the trial court had abused his discretion and denied the appellant the opportunity to present a defense which would affect the result of the trial and which could not, by the exercise of proper diligence, have been presented upon the former trial. The merit of the amendment rested alone upon such consideration as should be given to matter presented as newly-discovered evidence. In his qualification to the bill of exceptions reserved, the court states that one of the witnesses whose testimony was relied upon testified upon the trial, and the other was in and about the courtroom during that time, and he is inclined to believe had been summoned as a witness in the case. The newly-discovered evidence consisted mainly of observations made by these witnesses upon going over and making another inspection or survey of the old lines of the Smith tract of land. According to their affidavits filed with the amended motion, they discovered a tree marked L. P. at the southwest corner of the Lemuel Peters survey on the east line of the Lewis, just 2090 varas south of where appellant claims the northeast corner of the Smith tract of land is located. There was also an old marked line running from that point west to the west boundary line of the Lewis survey; also a marked line a part of the way across the north end of where it is claimed the Smith land should be.

There is nothing in the record to indicate that all of this testimony could not have been obtained and used on the trial. The nature of the suit and of the deed upon which the appellees must rely was notice of the necessity for establishing all the local conditions which would tend to show a mistake in the calls for the south boundary

line of the Lewis survey. Even if the truth of the facts set up in the affidavits be admitted, they certainly were not such as to require us to hold, as a matter of law, that the judgment in this case was erroneous. On the contrary, we are disposed to think that, with all of them in evidence, the court could have rendered no other judgment in the case.

There are other assignments in the record raising questions collateral to those considered, and which we think should not affect the result, since the judgment is sustained upon the ground that the deed to F. Smith embraced the land in controversy. The judgment is accordingly affirmed.

*Affirmed.*