## KYLE v. CLINKSCALES et al. (No. 824.)

Court of Civil Appeals of Texas. Waco. Nov. 14, 1929.

Rehearing Denied Dec. 12, 1929.

Frazier & Averitte, of Hillsboro, for appellant.

Collins & Martin, of Hillsboro, for appellees.

BARCUS, J. In 1915 R. B. Brown and wife subdivided a 200-acre tract of land out

of the Deaton survey in Hill county, Tex., into five separate tracts, containing 40 acres each. Said tracts were numbered from 1 to 5, and each corner of the respective tracts was marked with an iron pin. The south line of the three south subdivisions constitute the south line of the Deaton survey. The five subdivisions are shown by the following plat:

Subdivision 5 was conveyed to Ida Brown Darden. Subdivision 4 was conveyed to Underwood, and by him to appellee, who also purchased subdivision 3. After appellee became the owner of subdivisions 3 and 4, he removed the iron spikes which had been originally placed at the division corners between said subdivisions when the land was subdivided, and continued thereafter to own and cultivate same for about six years. On February 5, 1927, appellee made a contract with appellant, under the terms of which he sold and agreed to convey to appellant the 40 acres of land which had been sold by Underwood to appellee, and at the same time executed a deed to said property, which was put in escrow, to be delivered about January 1, 1928, on the payment by appellant of the consideration therein stated. The contract of sale provides:

"It is hereby expressly agreed that the said A. O. Clinkscales will at his own expense have said land measured and staked at the corners, so that he will deliver to said Kyle under this contract 40 acres of land."

On December 6, 1927, appellee employed J. F. Wright, the county surveyor, to go upon the land and make a survey thereof and establish and mark the corners of the tract of land as provided by the contract. The iron stakes between subdivisions 4 and 5 as originally placed when the entire tract of land was subdivided were in place and were recognized by all parties as the established corners of said subdivisions 4 and 5. Appellant was with appellee and the surveyor at said time, and assisted in running the lines and establishing the corners between subdivisions 3 and 4. The surveyor did establish the corners between said subdivisions 3 and 4, so that subdivision 4, being the tract conveyed to appellant, contained 40 acres of land, and iron pins were driven down at said corners. After the corners were thus established, the deed was thereafter, on December 28, 1927, by appellee delivered to, and accepted by, appellant.

On August 23, 1928, appellant filed this suit in trespass to try title, which, however, is in effect a boundary suit, seeking to establish the line between subdivisions 3 and 4; his contention being that the line between said subdivisions should be about 8 or 10 varas further east than where the iron stakes were placed by the county surveyor, Wright. The deed from appellee to appellant described the property by the same metes and bounds as those contained in the deed from Underwood to appellee, and were as follows:

"Being a part of the Deaton Survey in Hill County, beginning at the southwest corner of a tract of 40 acres conveyed by R. B. Brown and wife to R. F. and W. W. Siddons, which corner stands in the south line of said Deaton Survey, 306⅔ vrs. S. 60 W. from the southeast corner of said survey; thence N. 30 W. with the west line of the said Siddons tract 732.6 vrs. to its northwest corner; thence S. 60 W. 306⅔ vrs. to a stake for corner; thence S. 30 E. with the east line of a 40 acre tract conveyed by R. B. Brown and wife to Ida Brown Derden, 732.5 vrs. to a stake in the south line of said Deaton Survey; thence N. 60 E. with the said south line 306⅔ vrs. to the place of beginning, containing 40 acres of land."

The cause was submitted to a jury on one special issue, and in response thereto the jury found that the parties agreed that the two stakes separating lots 4 and 5 should be the west boundary line of the 40 acres purchased by appellant from appellee. No other issue was requested, except appellant asked for a peremptory instruction.

Appellant's sole contention is that, since the deed recites that the beginning corner of his land was located 306⅔ varas from the southeast corner of the Deaton survey, regardless of any and all other calls, it should begin at said point, and that neither oral nor written testimony was admissible to show that same was not the true location of the southeast corner of the tract which he purchased from appellee.

Appellee contends that, since the iron stakes which marked the corners of the land between subdivisions 4 and 5 as originally made were on the land, and that since the jury found all parties recognized same as the true corners between said subdivisions 5 and 4, and since the iron pipe which had marked the corners between subdivisions 3 and 4 had been obliterated, the true boundary line between subdivisions 3 and 4 was properly ascertained by beginning at the recognized and accepted corners of the land between subdivisions 4 and 5, and running thence N. 60 E. with the south line of the Deaton survey 306⅔ varas to the place of beginning, as called for in appellant's deed; appellee's contention

being that said last call placed and fixed the beginning place of appellant's land at a point 306⅔ varas N. 60 E. from the positively identified stake on the west line of subdivision 4 and east line of subdivision 5, known as the Derden tract. Appellee further contends that the line and corners as fixed and marked by the county surveyor between subdivisions 4 and 3 were by all parties at said time accepted as the true boundary line between said subdivisions.

The universal test in fixing a boundary line is, first, natural objects, such as rivers, trees, and other objects of nature; second, artificial marks that were placed on the ground by the surveyor; and, third, course and distance. Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Phillips v. Ayres, 45 Tex. 601. Another cardinal rule is that, where there are descriptive or directory calls, same will yield to locative calls where the locative objects are actually found. Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094. Another cardinal rule is that the beginning corner of a survey or plat is of no higher dignity than any other corner of the survey, and the field notes of a tract of land may be constructed from any corner found on the ground, regardless of whether it is the beginning corner as called for in the survey. Cox v. Finks (Tex. Civ. App.) 41 S. W. 95; Crosby v. Stevenson (Tex. Civ. App.) 156 S. W. 1110; Phillips v. Ayres, supra; Kennard v. Maxwell (Tex. Civ. App.) 287 S. W. 60; Taft v. Ward, 58 Tex. Civ. App. 259, 124 S. W. 437; Ramseaur v. Ball, 59 Tex. Civ. App. 285, 125 S. W. 590. Another cardinal rule in establishing boundary lines is that calls for course and distance always yield to natural or artificial locative calls when same can be definitely and surely found upon the survey. Duren v. Presberry, 25 Tex. 513; Kennard v. Maxwell, supra; Hamilton v. Blackburn, supra. Another cardinal rule is that, where a corner of a survey or tract of land is established, and the location thereof as made by the surveyor is positively identified, same will control and take precedence over course and distance from the corner or lines of other or adjoining surveys, and same must, when conflicts arise between said calls, yield to the established corner as fixed by the surveyor. Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Hays v. Clawson (Tex. Civ. App.) 286 S. W. 857.

With the foregoing recognized rules for construction, it appears to us that appellant's contention that his corner must begin 306⅔ varas from the southeast corner of the Deaton survey cannot be sustained. The deed to appellant states that the land being conveyed to him begins at the southwest corner of the Siddons 40 acres, and that said corner is 306⅔ varas from the southeast corner of the Deaton survey. If said point is accepted as said corner, then the field notes called for in appellant's deed would not reach either of the established corners on the west side of appellant's land. On the other hand, if the southeast corner of appellant's land is located where the county surveyor, Wright, established same, then the field notes called for in appellant's deed will exactly tally with and tie on to subdivision 5 on the west. If the iron pipe at the southwest corner of subdivision 4 and the southeast corner of subdivision 5 is taken as the beginning point of the survey, then unquestionably, from the record, the county surveyor, Mr. Wright, correctly located the southeast corner of appellant's land, and correctly established the boundary line between subdivisions 3 and 4. We think the last call in appellant's deed which places his southeast corner at a point N. 60 E. from the stake in southeast corner of the Derden tract is of as much probative force as the first call in said deed that said corner is S. 60 W. from the Deaton southeast corner. Our courts have from the early decisions held that a call locating the beginning point of a tract of land as being a certain named distance from another survey was a descriptive call, and that said descriptive call must, when in conflict with other known locative calls found on the survey, yield thereto. Under facts very similar to the contention of appellant herein the courts have held against appellant's contention. Duren v. Presberry, 25 Tex. 513; Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Phillips v. Ayres, 45 Tex. 601; Kennard v. Maxwell (Tex. Civ. App.) 287 S. W. 60. There was no effort made to show where the iron pipes that marked the line between subdivisions 3 and 4 were placed at the time the land was originally subdivided. Neither was it shown that the surveyor began at the southeast corner of the Deaton survey in making said original subdivisions. No effort was made to show the southwest corner of the Siddons tract, except by running the course and distance, 306⅔ varas S. 60 W. from the southeast corner of the Deaton survey. We think the descriptive calls contained in appellant's deed that his tract would begin at the southwest corner of the Siddons tract, a point 306⅔ varas from the southeast corner of the Deaton survey must and should yield to the established locative iron pipe recognized as the southwest corner of said subdivision 4 and southeast corner of subdivision 5.

We further agree with appellee's contention that appellant is bound by the agreement found by the jury to have been made by him and appellee just a short time prior to the time he accepted the deed, to the effect that the iron stake as located between subdivisions 4 and 5 was the recognized west boundary line of the land sold by appellee to appellant. The courts hold that, where there is a disputed boundary line, the parties at interest may by agreement establish said line, and same will be binding upon all who were

parties to said agreement. Lecomte v. Toudouze, 82 Tex. 208, 17 S. W. 1047, 27 Am. St. Rep. 870; Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 241, 23 Am. St. Rep. 340; Hill v. Walker (Tex. Civ. App.) 140 S. W. 1159. The jury found that appellee and appellant agreed at the time the county surveyor, Wright, established the line between subdivisions 3 and 4 in December, 1927, and placed the stakes at the corners between said subdivisions, that they would accept the west line of appellant's tract as beginning at the iron pipes locating the line between subdivisions 4 and 5. If said iron stakes do mark appellant's west line, then, under the undisputed facts, the judgment of the trial court awarded appellant the 40 acres of land which he actually purchased from appellee.

The record shows without dispute that just a short time before appellant accepted the deed to the land he purchased from appellee, and before he paid the purchase price therefor, he, together with appellant and the county surveyor, went upon the land for the sole purpose of establishing the boundary lines and marking the corners thereof, and, after same had been established and the corners marked, with full knowledge of the actual location of the corners as made by the surveyor, appellant then accepted the deed and paid the consideration therefor. Appellant has been awarded 40 acres of land, the amount called for in his deed. We think, under the facts in this case, the east boundary line thereof was correctly established by the county surveyor, Wright. If we are in error in this holding, we think appellant was bound by the agreement which the jury found he and appellee made just prior to the time he received and accepted his deed, which fixed the west boundary of appellant's land at the stake marking the line between subdivisions 4 and 5.

The judgment of the trial court is affirmed.

STANFORD, J. Not being able to agree with Associates in the disposition of this case, I hereby file the following dissenting opinion:

This suit was brought by appellant against appellees A. O. Clinkscales and his tenant, Frank O'Kelley, in trespass to try title to recover a certain tract of land as described in a deed from appellee A. O. Clinkscales to appellant, and for rents against both appellees. Said cause was tried to a jury, and, on the jury's answer to one issue, the court entered judgment for appellees, and appellant had duly appealed.

Under appellant's first assignment, he contends that the court erred in refusing to give to the jury his requested instruction directing the jury to find for appellant.

The record shows that the south half of the H. H. Deaton survey, many years ago, was divided into three blocks of land of 40 acres each; each of said blocks being 306⅔ varas east and west and 732.6 varas north and

south. We treat said lines as running east and west, and north and south, but, as a matter of fact, they run on a variation of 30 and 60 degrees. The south line of said three blocks constitutes the south line of the south half of said Deaton survey. The said three tracts are shown by the following plat:

| 306⅔ 5 | 306⅔ 4 | 3 |
|---|---|---|
| Ida Brown Derden 40 A.    732.6 | A. O. Clinkscales 40 A.    732.6 | Siddons Tract |
| 306⅔ | 306⅔ | 306⅔    S. E. Corner H. H. Deaton Sur. |

The east 40-acre tract, No. 3 on the plat, is known as the Siddons tract, and the southeast corner of said Siddons tract was also the southeast corner of the Deaton survey, a well-established corner. The west 40-acre tract, No. 5 on the plat, is known as the Brown Derden tract. The middle 40-acre tract, No. 4 on the plat, on December 13, 1922, was owned by Alva Underwood, and was by him by deed of said date conveyed to appellee A. O. Clinkscales, said deed being recorded in volume 204, page 341, of the Deed Records of Hill county, Tex. Appellee Clinkscales also acquired the east, or Siddons, 40 acres, No. 3, and appellant acquired the west or Derden 40-acre tract, No. 5. On February 5, 1927, appellee Clinkscales and wife entered into a written contract, by the terms of which they obligated themselves, for the consideration of $3,600 cash to be paid upon the delivery of the deed conveying said land to R. C. Kyle, and the assumption of the payment of a loan on said land for $2,400 by said Kyle, to sell and convey by warranty deed to appellant, R. C. Kyle, the middle 40-acre tract, described as follows:

"40 acres of land out of the H. H. Deaton survey in Hill County, Texas, being *the identical tract* (italics mine) conveyed to A. O. Clinkscales by Alva Underwood and wife by deed dated December 13th, 1922, and recorded in Vol. 204, page 341 of the Deed Records of Hill County, Texas."

The description of said land in the deed from Underwood to A. O. Clinkscales is as follows:

"All that certain tract or parcel of land, in Hill County, Texas being a part of the Hiram H. Deaton Survey, Pat. No. 1592, Vol. 9, Abst. No. 226, and more fully described by metes and bounds as follows: Beginning at the S. W. corner of a tract of 40 acres conveyed by R. B. Brown and wife to R. F. and W. W. Siddons, which corner stands in the south line of said Deaton survey, 306⅔ varas S. 60 W. from the S. E. Corner of said sur-

vey; thence N. 30 W. with the west line of said Siddons tract 732.6 varas to its N. W. corner; thence S. 60 W. 306⅔ varas to a stake for corner; thence S. 30 E. with the east line of a 40 acre tract conveyed by E. B. Brown and wife to Brown Derdon, 732.6 varas to a stake in the south line of said Deaton survey; thence N. 60 E. with said south line, 306⅔ varas to place of beginning, containing 40 acres of land."

In the deed from A. O. Clinkscales and wife to appellant, the description is identical with the description given in the deed from Alva Underwood to A. O. Clinkscales above. The majority opinion proceeds upon the assumption that the true location of the line between tracts Nos. 3 and 4 is in dispute. This is not the issue involved. There is no contention but that the southeast corner of the Deaton survey is also the southeast corner of the Siddons 40-acre tract No. 3. There is no controversy but that the southwest corner of the 40-acre Siddons tract is also the southeast corner of tract No. 4, the one in controversy, and that this corner is 306⅔ varas S. 60 W. from the southeast corner of the Deaton survey. The southeast corner of the Deaton survey is a well-established corner, marked by a cedar post set in the ground, well known by all the parties interested. Surveyor Herman Eastland, Jr., on May 22, 1928, surveyed tract No. 4 involved in this suit, beginning at the southeast corner of the Deaton survey. He testified in part:

"Mr. Clinkscales pointed out to me the southeast corner of the Clinkscales tract (No. 3) and the H. H. Deaton survey. There was a cedar post set there and pointed out by him as being the corner of the Deaton survey. From that beginning point I ascertained the point which stands in the south line of said Deaton survey 306⅔ varas south 60 west from the southeast corner of the Deaton survey as pointed out to me."

John F. Wright, the county surveyor, testified in part:

"The southeast corner of tract No. 3 here is also marked the southeast corner of the Deaton survey. * * * It is my information that the southeast corner of tract No. 3 is the southeast corner of the Deaton survey. * * * Mr. Clinkscales may have pointed out to me a cedar post, at any rate, I think he pointed out the southeast corner of the forty acres (No. 3) east of the tract in question as the southeast corner of the H. H. Deaton survey."

There is no evidence to the contrary. As a matter of fact, the record shows conclusively that Surveyor Wright did begin at the southeast corner of the Deaton survey and run 306⅔ varas S. 60 W. to a point in the south line of the Deaton survey, for the southwest corner of tract No. 3 and the southeast corner of tract No. 4, and from this point he continued S. 60 W. 306⅔ varas along

the south line of tract No. 4, and said he found he then lacked about 10 varas being to a stake, which Clinkscales contended was the southeast corner of the Derden tract No. 5 and the southwest corner of No. 4. He then began at said stake, reversed his calls, and ran back, he said, 306⅔ varas N. 60 E. along the south line of the Deaton survey, and at said point put down a wooden peg for the southeast corner of tract No. 4, and then went to a stake claimed to be the northeast corner of the Derden No. 5 and the northwest corner of tract No. 4, and did likewise, and put down another peg for the northeast corner of No. 5 and northwest corner of No. 4. Surveyor Wright was unable to find his field notes, if he had made any, and so furnished none, and none are of record anywhere, but the following excerpt from his evidence reveals the real issue in this case:

"The fieldnotes call for beginning at the southeast corner of the Deaton survey and going 306⅔ varas S. 60 W., that wasn't hard to do. Then the fieldnotes call for making the northerly run 732⁹⁄₁₀ varas, that wouldn't have been hard to do. The fieldnotes then call for making the next run 306⅔ varas south 60 west. I did not run that line south 60 west 306⅔ varas except to reverse it. I run that line in the opposite direction. I am just trying to tell you what I did * * * If I had set a peg 306⅔ varas S. 60 W. from the southeast corner of the Deaton survey, I would have set it nine or ten varas further east than I did. If I had followed the fieldnotes in the deed just as they were called for in the deed and not in some reverse order, and had set a peg there with that call 732⁹⁄₁₀ varas from the first call, I think I would have set a peg nine or ten varas further east than I did. * * * If I had set a peg there at the end of that third call, as the deed called for it, it would have been at the point that is contended for, there would have been a difference of about nine or ten varas. It would have been nine or ten varas further east I think. I did not follow the next call * * * If I had done that I think I would have come out at a point eight or ten varas further east in the south line of the Deaton survey than is contended for. * * * If I had driven the pegs down at the end of each call, starting from the southeast corner of the Deaton survey as Mr. Clinkscales pointed it out and as I found it on the ground, and gone the course and exact distance as the deed called for in the very direction the deed called for, I don't guess there would have been a single peg set where I left them. Each one of them would have been in the neighborhood of nine or ten varas from where I set them—" that is, 9 or 10 varas further east.

Appellee makes no contention that his tract No. 3 is short, or does not contain its full 40 acres. There are no natural objects to desig-

nate the corners or lines of any of these tracts, and the lines and corners of all of them doubtless have for years been located with reference to the southeast corner of the Deaton survey. In fact, to locate the southeast corner of tract No. 4 it is only necessary to run 306⅔ S. 60 W. from the southeast corner of the Deaton survey, which also locates the southwest corner of tract No. 3, and assures it its full 40 acres.

Appellee Clinkscales contends, in effect, that there are stakes set in the ground at both the southeast and northeast corners of tract No. 5, the Derden tract, and appellant agreed that the line between these stakes should constitute the west boundary of his tract bought from appellee. Appellant denied such agreement. Appellee contends further that measurements should be made from these stakes east to make 40 acres of land for appellant. If there is an excess in tract No. 4 of a strip of land 9 or 10 varas wide and 732⁶⁄₁₀ varas long, as contended by Surveyor Wright, and said measurements are made from the claimed east line of the Derden tract east, then this excess would be added to the Siddons tract No. 3, owned by appellee Clinkscales, which already has its full 40 acres, and appellant would not be getting the land he bought and paid for. It is very doubtful if there is any excess in No. 4. Surveyor Wright is the first and only one who has ever contended there was any excess. Surveyor Easterwood, about the same time, ran the south line of No. 4, 306⅔ varas, and he said he lacked only a few feet reaching the east line of the Derden tract. He testified further, taking the field notes as shown by appellant's deed, No. 4 contained only 39⁶⁄₁₀ acres. Tract No. 4 was not purchased at so much per acre, but was purchased for a stated amount, to wit, $6,500. Appellee did obligate himself to sell and convey, and he did convey, to appellant the identical tract conveyed to himself by Alva Underwood. But, if this excess does exist, and if appellant is entitled to only 40 acres, he is certainly entitled to the 40 acres he bought and which is described in his deed, and, in order for appellant to have the land he bought, it is important in locating same to begin at the beginning point called for by his deed and follow the description given in said deed. If his land is placed 10 varas further west in order to add a supposed excess to appellee's land, then he is compelled to take a strip of land 10 by 732⁶⁄₁₀ varas he did not buy in lieu of a like strip he did buy and included in his deed.

This controversy should be determined by the provisions of the contract of sale and the deed made in pursuance thereof. The record shows conclusively that on February 5, 1927, appellee and wife obligated themselves by a written contract to convey to appellant a certain described tract of land, and on the same date did execute such deed, as they were obligated to do, fully describing said land by metes and bounds, and placed same in escrow; that on December 28, 1927, nearly eleven months thereafter, appellant paid for said land, and appellee delivered to him said deed. There is no ambiguity in the description of the land appellee and wife were obligated to convey, and did convey, to appellant. Appellees do not contend there was any obscurity in such description. Appellees do not contend there was any mistake, mutual or otherwise, in the execution or delivery of said deed. Appellee Clinkscales made no effort by pleading or evidence to set aside or reform said deed in any particular. Appellee Clinkscales did allege that, when the sale was agreed upon, appellant agreed to have his 40 acres measured off immediately east of the line between the stakes on the northeast and southeast corners of the Derden tract No. 5, but there was no attempt to prove such agreement. However, appellee and Surveyor Wright testified that, when the latter measured the land on December 6, 1927, some ten months after the contract and deed were executed and placed in escrow, appellant did make such verbal agreement, but appellant denied ever having made such agreement, and furthermore, on December 28, 1927, some 20 days after this alleged verbal agreement, appellee in person delivered the deed and collected the purchase money.

Appellee alleged further that the Surveyor Wright furnished the wrong field notes, but there was no attempt to prove this. This was a suit in trespass to try title, brought by appellant against appellee Clinkscales and his tenant, O'Kelley, for the identical land which appellee Clinkscales obligated himself to convey, and which he did convey by warranty deed to appellant, after appellant had fully paid therefor, in compliance with the contract of sale. The contract of sale and the warranty deed made in pursuance thereof were admitted in evidence without objection. The only defense made by any evidence was the parol agreement testified to by appellee and the surveyor, to the effect that, while the land was being surveyed some ten months after the deed was written and twenty days before it was delivered, appellant agreed to accept the line between stakes purporting to mark the northeast and southeast corners of the Derden tract as his west line. This was the only issue made by any evidence and the only issue submitted to the jury, and the finding of the jury that this parol agreement was made was the only basis of the judgment for appellee. Appellant testified he never made such agreement; that he never agreed, or intended to agree, to take any land except that described in his deed. This parol evidence of appellee and others, relied upon to change

the description of the land as contained in the deed, and to show other land was intended to be conveyed, was inadmissible for any purpose, and should not be considered by this court as any evidence. If a party to a warranty deed in a collateral proceeding be permitted by parol to prove the land described in such deed was not the land intended to be conveyed, deeds would be of little value, and no title would be safe. J. C. Penny Co., Inc., v. Grist (Tex. Civ. App.) 13 S.W.(2d) 936 (writ refused); Morgan v. Mace et al. (Tex. Civ. App.) 259 S. W. 1095; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533. A deed cannot be collaterally attacked by the parties to it, or their privies, by parol evidence tending to show an intention different from that which its language unmistakably expresses. Davis et al. v. George et al., 104 Tex. 106, 134 S. W. 326; Scheller v. Groesbeck (Tex. Com. App.) 231 S. W. 1092; Browne v. Gorman (Tex. Civ. App.) 208 S. W. 385 (writ refused). Where deed is plain and unambiguous, parol evidence is not admissible to show the intention of the parties thereto, but such intention is determined by the court as a matter of law from the terms of the instrument. Graham's Estate v. Stewart (Tex. Civ. App.) 15 S.W.(2d) 72 (writ refused).

Appellant contends further, in effect, that neither the pleadings nor the verdict rendered herein warranted the judgment rendered by the court. The record shows appellant's suit was in trespass to try title to recover tract No. 4, beginning at the southwest corner of tract No. 3, which corner is in the south line of the Deaton survey 306⅔ varas S. 60 W. from its southeast corner, and describing said tract by metes and bounds, as described in the deed from appellee Clinkscales to appellant. In addition to a general denial, a plea of not guilty, the three, five, and ten year statute of limitations, the appellee pleaded as follows:

"Defendant further alleges that it was his intention to convey 40 acres, and he desires the said plaintiff to have said 40 acres of land so conveyed, and he now alleges that plaintiff has 40 acres of land conveyed by him to plaintiff, beginning at the two stakes forming the boundary line between lot No. 4 and lot No. 5 and extending east, and that he denies ownership or any claim whatever to said 40 acres of land lying and being immediately east of the two said stakes forming the boundary line between lot No. 5 and lot No. 4."

The one issue submitted to the jury was:

"Did the plaintiff and the defendant agree that the two stakes separating lots No. 4 and 5 should be the west boundary line of the 40 acres of land sold by the defendant to plaintiff?"

The jury answered: "Yes." On this verdict the court entered judgment, describing the land as follows:

"Beginning at an iron stake in the S. E. corner of lot No. 5, the same being the S. W. corner of this particular tract of land, as established by the evidence as the original agreement between the parties of this suit; Thence E. 30 N. 306⅔ vrs. to an iron stake for the S. E. corner of this particular tract; thence N. 30 W. 732.6 vrs. to an iron stake for the N. E. corner of this said tract; thence S. 60 W. 306⅔ vrs. to an iron stake for the N. W. corner of this said tract; thence S. 30 E. with east line of a 40 acre tract conveyed by R. B. Brown and wife to Ida Brown Derden, 732.6 vrs. to the beginning, containing in all 40 acres of land."

The jury did not find there was an iron stake in the southeast corner of lot No. 5 and southwest corner of lot No. 4, nor did they find there was a stake on the corners of said tracts, or anywhere else at the time of the trial. There was evidence that there were stakes about a year before the trial, which appellee claimed represented said line, but there was no evidence said stakes were there, or, if so, in the same place, at the time of trial. The court found these issues of fact. The jury did not find the beginning point of the description of the 40 acres, nor the course nor distance of any call therein, but the court found these issues of fact. The first two calls are for an iron stake in the southeast corner and northeast corner of tract No. 4. The jury did not find there were any stakes at either of said corners. There was evidence that stakes were set at said supposed corners, as appellee contended, about a year before the trial, but there was no evidence said stakes were there, or, if so, at the same place, when this case was tried. It was necessary for the court to find all these issues of fact in order to enter judgment on the verdict. The jury found nothing except the parties agreed that two stakes separating lots 4 and 5 should be the west boundary line of the 40 acres of land. It is thought this verdict was insufficient in itself as a basis for a judgment, and the trial court had no right to find other facts in aid of the verdict and render judgment on the verdict as thus aided. Houston Packing Co. v. Griffith (Tex. Civ. App.) 164 S. W. 431; Curlee v. Rogan (Tex. Civ. App.) 136 S. W. 1126; Williams v. Smith (Tex. Civ. App.) 98 S. W. 916; Smith v. Tucker et al., 25 Tex. 594; Roche v. Lovell, 74 Tex. 191, 11 S. W. 1079; Government Hill Co. v. Mundy (Tex. Civ. App.) 165 S. W. 78.

The writer is of the opinion this case should at least be reversed, and on another trial, if the deed from appellee to appellant is not set aside or reformed, upon sufficient pleading and evidence, the land as described in said deed should be awarded to appellant.