### DAVIS v. TEXAS EMPLOYERS' INS. ASS'N.

#### No. 2987.

Court of Civil Appeals of Texas. Eastland.

April 17, 1953.

Letcher D. King, Abilene, for appellant.

McMahon, Springer, Smart & Walter, Abilene, for appellee.

COLLINGS, Justice.

This is a Workmen's Compensation suit and the. trial was before a jury. Thirteen special issues were submitted but the jury answered only special issue No. 1 to the effect that plaintiff, Orval S. Davis, did not sustain the alleged accidental injury and special issue No. 7 to the effect that Davis did not sustain any partial incapacity to labor as a result of an accidental injury, if any, suffered by him. The verdict was received by the court and judgment thereon entered that plaintiff Davis take nothing. From such judgment this appeal is brought.

Appellant contends in his third point that the court erred in granting judgment denying recovery because the pleadings and undisputed. evidence showed that appellee insurance .company, after full investigation, voluntarily paid to appellant twelve weeks compensation at the maximum rate of $25 per week. It is urged that the company is estopped from denying the alleged injury and .its liability therefor; that by the payment of twelve weeks compensation to appellant and by its offer of settlement; the company, in effect, admitted appellant's injury and its liability therefor, and that the court erred in permitting the company to assume a directly inconsistent and contrary position on .the trial of the case and in entering judgment based thereon. The point is overruled. It is too well settled to require citation of authorities that an offer to compromise is not even admissible as evidence to show liability. The effect of payments of compensation to a

claimant pending final investigation is dis-. cussed by Judge Hickman in Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991, .995, and in holding that payments of a certain amount per week to a claimant did not estop the company from contending for a weekly wage rate less than that paid by the insurer, the following language is used:

"Courts should encourage and not discourage the prompt payment of compensation when an injury is sustained by an employee, and a holding that payments made pending the final investigation of the claim would be binding upon the insurer both as to liability and rate of compensation regardless of what that investigation should disclose would manifestly discourage prompt payments following injuries."

As previously noted, only special issues Nos. 1 and 7 were answered by the jury. Special issues Nos. 1, 3, 7, 11 and 12 of the court's charge and the answers to issues 1 and 7 were as follows:

"Question No. 1: Do you find from a preponderance of the evidence that Orval S. Davis sustained an accidental injury on November 19, 1951, resulting in his right kidney being knocked down from its normal position? Answer yes or no. Answer: No. If you have answered question No. 1, yes, then you will answer:

\*   \*   \*   \*   \*   \*

"If you answer Question No. 1, yes, then answer:

"Question No. 3: Do you find from a preponderance of the evidence that the Plaintiff, Orval S. Davis, suffered total incapacity to labor for any length of time as a natural result of said injuries, if any, received by him on November 19, 1951? Answer yes or no. Answer.: ———.

"Question No. 7: Do you find from a preponderance of the evidence that Plaintiff did not sustain partial incapacity to labor, as a result of said accidental injury or injuries, if any, on or about the 19th day of November,

1951? Answer 'He did' or 'He did not.' Answer: He did not.

"Question No. 11: Do you find from a preponderance of the evidence that the plaintiff's incapacity, if any, you have found, is not solely caused either by disease or a congenital condition, disconnected with any injury, if any sustained by him on November 19, 1951?

"Answer: 'It is caused solely by disease' or 'It is not caused solely by disease.' Answer: ———.

"Question No. 12: Do you find from a preponderance of the evidence that Plaintiff's incapacity, if any, since February 12, 1952, and hereafter, is not solely caused by disease disconnected with any injury, if any, suffered by him on November 19, 1951? Answer: 'It is caused solely by disease' or 'It is not caused solely by disease.' Answer: ———.

"If you answer Question No. 11 'It is caused solely by disease' then and in that event you need not answer Question No. 12."

It is contended in appellant's second point that the trial court committed fundamental error apparent on the face of the record in rendering final judgment that appellant take nothing and pay the costs based upon the jury's verdict which answered only two out of the thirteen special issues submitted and which did not answer special issues Nos. 3, 11 and 12.

█  The answer to special issue No. 1 found that appellant did not sustain the injury alleged in his petition. Appellant's right to recover hinged upon an affirmative answer to this issue. Since the issue was answered in the negative the remaining special issues not answered by the jury became immaterial and the failure to answer them did not prevent the rendition of the judgment warranted and required by the negative answer to special issue No. 1. Texas Employers' Ins. Ass'n v. Derrick, Tex.Civ. App., 207 S.W.2d 199, Ref.N.R.E.

██  For another reason, no error is presented in appellant's third point. It appears from the record that the verdict of

the jury was returned, accepted by the court, and the jury discharged on June 7, 1952. Appellant made no complaint at the time the verdict was received. His first complaint of the verdict was on August 12, 1952, when he sought to file his first amended motion for new trial. The verdict is not conflicting. It finds facts supporting all elements necessary for judgment. The acceptance of such an incomplete verdict, even though some of the unanswered issues were submitted unconditionally, is not fundamental error as urged by appellant. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W. 2d 979. A party who is dissatisfied with such a verdict because it is not complete has the duty to make his complaint known to the trial judge before the verdict is officially accepted and the jury discharged. If he does not make timely objection, the matter is waived. Lewis v. Texas Employers' Ins. Ass'n, Tex.Sup., 246 S.W.2d 599.

■ It is further contended that the court erred in refusing to permit appellant to file and present his first amended motion for new trial. In 31 Tex.Jur., page 142, Sec. 130, it is stated:

"* * * applicant may, prior to the time that his motion is disposed of, be permitted to amend by alleging additional grounds for new trial; but it is not error to refuse to permit a motion to be amended for the purpose of setting up grounds which are insufficient to warrant the grant of a new trial."

In support of the above stated rule, see also Carwile v. Wm. C. Cameron & Co., Inc., Tex.Civ.App., 116 S.W. 611, Err.Ref.; Ramseaur v. Ball, 59 Tex.Civ.App. 285, 125 S.W. 590; Cunningham v. Gaines, Tex.Civ. App., 176 S.W. 148, Err.Ref.

We have examined appellant's amended motion and find that it contains no grounds which would warrant the granting of a new trial. Appellant alleged in his amended motion as his first assignment of error that appellee "knowingly adduced and submitted * * * false testimony which effected * * * and brought about the * * * verdict and judgment" against him in this case. This contention is particularly urged by appellant as reversible error. The ques-

tioned testimony is that of Mr. W. R. Eppler, an owner of the Sunbeam Super Market at which appellant was employed and allegedly sustained injury. On direct examination he testified as follows:

"Q. When was it that you first heard that this man claimed that he got hurt working out there at your place? A. When I heard he had gone to the hospital.

"Q. And he had already gone to the hospital, is that right? A. Either for examination or something; yes.

"Q. And at no time did he ever ask you to be sent to a doctor; is that right? A. He did not.

"Appellant's Counsel: I object to counsel leading the witness. I hate to lose time doing that but—

"The Court: All right.

"Appellee's Counsel: That's all. You may have the witness."

* * * * * *

"Q. Mr. Eppler, counsel has proved that you operate the Sunbeam Super Market in Abilene, Taylor County, Texas. If I am not talking loud enough for you tell me? A. That's all right.

"Q. And I'll get her out. You are the sole owner of that store, is that correct? A. Yes, sir."

At the hearing on the motion for new trial, Mr. Eppler testified on direct examination by Mr. King, as follows:

"Q. Mr. Eppler, you testified as a witness on the trial of this case, didn't you? A. Yes.

"Q. Didn't you testify at that time you had never filed any notice of injury as employer of Orval S. Davis, and as operator of the Sunbeam Super Market, that he sustained any injury on the 19th day of November, 1951? A. I hadn't made any claim because there wasn't any claim.

"Q. I say, didn't you testify that you hadn't ever filed any written notice with your insurance carrier, the defendant in this case, that your employee had ever sustained any injury on the

19th day of November? A. I said as far as I knew he never had complained to me.

"Q. In other words, you didn't make any such report? A. There wasn't any report to make.

"Q. Well, Jack Eppler, is he one of the— A. He is my son.

"Q. He is your son, and one of the co-owners of the store, is that correct? A. It is not on paper, but he is.

"Q. He has authority to sign Sunbeam Super Market by Jack Eppler, owner, is that right? I show you Plaintiff's Exhibit No. 5 and ask whether or not that is your son's signature? A. That is my son's signature.

"Q. He had authority to sign that, didn't he? A. Yes.

"Q. You didn't ever, in your testimony, divulge that any one had signed any report of Orval S. Davis having sustained any injury while employed at your store, right? A. Wait a minute. I don't understand that. (Question read). Not till after the 27th day, ten days, eight days after it happened, we got our information to the hospital and doctors.

"Q. Didn't you testify on the trial of this case that you never filed any report with the Texas Employers' Insurance Association that Orval S. Davis had sustained any injury while employed by you, or that he was claiming any injury? A. I testified I hadn't filed a claim.

"Q. I said, didn't you testify that no claim or employer's first report of injury had ever been filed by you with the Texas Employers' Insurance Association? A. I don't remember saying that. I suppose you had—Jack took care of it.

"Q. Would you say you did or didn't?

"Appellee's Counsel: Your Honor, whatever the witness' testimony is speaks for itself, whether he did or didn't.

"The Court: I think it does.

"Appellee's Counsel: Mr. King has got the transcript of the testimony. I don't know whether he was asked that direct question or not; I am sure he doesn't.

"Q. You also testified that you didn't know anything about the filing of any notice of claim on the employer's first report of injury? A. I said I hadn't made any report until eight days later; we heard he was going to sue us. We had to make out a claim; the claim originated, seems to me like, in a lawyer's office, didn't originate down at the store.

"Q. You also testified you didn't know anything about the filing of any kind of notice and that your bookkeeper handled all that matter, and you didn't know anything about it, is that correct, sir? A. That's right.

"Q. At the time that your son, unbeknowing to you, filed the employer's first report of injury was the man Cox then employed by you? A. Yes.

"Q. As a matter of fact he was employed several months after that wasn't he? A. I don't know.

"Q. After the 19th of November? A. He worked on through Christmas; I don't know how long.

"Q. He wasn't there or he was? A. He was working there, yes; but I don't know how long.

"Q. You personally, not your son, gave Mr. Redmon an oral report about the injury of the plaintiff in this case, Orval S. Davis, did you not? A. I gave you what?

"Q. You didn't give me—I say, other than the report which is plaintiff's exhibit No. 5 you had an oral conversation with Mr. Redmon and reported the injury of Orval S. Davis, told him before that report was filed, didn't you? A. I think Jack talked to Mr. Redmon, I didn't.

"Q. You didn't talk to him? A. I didn't know anything about a claim until you reported it.

"Q. But the fact is, you say you didn't personally have any conversation with Mr. Redmon, but that your son and partner, Jack, had any oral conversation with him over the telephone —just a minute—before the 27th day of November, 1951, which is reflected there by the employer's first report and the plaintiff's exhibit No. 5? A. That is the first thing I knew anything about it, when Jack made that report.

"Q. He hadn't discussed the matter with you? A. No. Jack had been out on a hunting trip and just gotten in.

"Appellant's counsel: That's all."

At such hearing on the motion for new trial, appellant introduced in evidence his Exhibit No. 5, the "Employer's First Report of Injury" which purported to have been made by "Sunbeam Super Market" and signed by Jack Eppler, as owner. The report was dated November 27, 1951. It listed the name of the injured as Orval Davis, indicated that the date of the injury was November 19, 1951, and that disability began on November 20, 1951. In an answer to the inquiry as to when the employer or foreman first knew of the injury, the report indicated "immediately."

It is urged by appellant that the exhibit entitled "Employer's First Report" which he first discovered and had knowledge of too late for use in the trial of the case, and the testimony had on motion for new trial demonstrates that the witness, W. R. Eppler, gave false testimony in two particulars. First that the "Employer's First Report of Injury" signed by Jack Eppler to the effect that the employer knew of the injuries immediately demonstrates the falsity of W. R. Eppler's testimony that he learned of such injuries only after Davis entered the hospital on November 25, 1951; and second, that W. R. Eppler admitted on the hearing of the motion for new trial that he was not the sole proprietor of the Sunbeam Super Market as he testified on the trial

of the case, but that in truth and fact, the business was a co-ownership consisting of himself and his son, Jack Eppler.

The record does not show that W. R. Eppler's testimony to the effect that he did not know of appellant's injury until after he went to the hospital on November 25, 1951, was false. The Employer's First Report of Injury is dated November 27, 1951, which is two days after appellant entered the hospital and was not signed by W. R. Eppler but by his son, Jack Eppler.

It is true that W. R. Eppler admitted on hearing of the motion for new trial that his testimony on the trial of the case to the effect that he was the sole owner of the business was incorrect and that in truth and fact, his son, Jack Eppler, owned an interest therein. This, however, is not a contradiction of such nature as to entitle appellant to a new trial. The changed testimony does not tend to prove any fact material to appellant's right to recover It deals with a collateral matter which even though admitted to be true is in no way inconsistent with the jury finding that appellant did not sustain the alleged injury. In this connection, see 31 Tex.Jur., page 113. As stated in 66 C.J.S., New Trial, § 114, pages 326, 327:

"Thus evidence to show that a witness had made statements inconsistent with his testimony or to contradict him on immaterial or collateral matters is seldom ground for a new trial."

The court heard evidence on the motion for new trial dealing with the claimed false testimony as set out in the amended motion. The grounds urged in the motion as explained by the evidence introduced were insufficient to warrant the granting of a new trial. Under the circumstances, it is our opinion that the court did not abuse its discretion in refusing to permit appellant to file his amended motion for new trial.

The judgment is affirmed.